**William Shane WOOD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00052–CR.**

Court of Appeals of Texas, Texarkana.

Submitted July 2, 2002.

Decided Aug. 22, 2002.

Ebb B. Mobley, Longview, for appellant.

Tim Cone, Upshur County Dist. Atty., Gilmer, for appellee.

Before MORRISS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

After a jury trial, William Shane Wood was found guilty of murder and was ordered confined for thirty-five years in the Texas Department of Criminal Justice–Institutional Division.

Before Wood's trial, Jason Barber had been charged and convicted for the same shooting, but Barber's conviction was later set aside on the joint motion of Barber and the State because "Barber did not commit the crime for which he was convicted...." *Barber v. State,* 24 S.W.3d 620 (Tex.App.-Texarkana 2000, no pet.). Wood's jury was made aware of Barber's erroneous conviction for the murder charged to Wood.

Wood appeals, asserting the trial court erred in overruling his motion for mistrial made after an exchange between one of the jurors and the trial judge the morning after the guilty verdict had been returned.

The jury had returned at 4:25 p.m. on February 15, 2001, with, according to the jury foreman, a unanimous verdict of guilt, which was read in open court. After counsel for both sides declined the trial court's invitation to poll the jury, the trial court then recessed the proceedings until the next morning. When the court reconvened, the following occurred:

THE COURT: [Juror], if you'll come around. I cleared the courtroom so no one's here but the attorneys, okay. Mr. English [had] told me that you had some things that you were concerned about so we're going to make a record of this if you'll go ahead and tell me what it is that you have spoken to him about.

[JUROR]: I had no idea it would be in front of all these people. I thought it would be private.

THE COURT: Well, we don't have any place to go. I've got to have the court reporter. Well, y'all don't have to stand up. I'm sorry. That will make you a little more comfortable I guess.

[JUROR]: I guess the way I feel is another man has been previously wrongly convicted and I want to make sure that—y'all have entrusted me and my better judgment and I want to make sure that I'm making the right decision here, that I'm not putting another innocent man in jail. And my question was to him is can a juror change their mind after we have come to the conclusion of guilty.

THE COURT: After the verdict has been read and accepted, the answer would be no.

[JUROR]: Okay.

THE COURT: Prior to that time when you-all are deliberating—

[JUROR]: Right.

THE COURT:—and people are exchanging thoughts and ideas about the evidence, at those—during those times, then it probably would not be unusual for a juror to change their mind and even maybe more than one time. But once the verdict has been accepted by the court which it was yesterday and announced, at that point there would be no, no way that you could change your mind on that now.

[JUROR]: Okay.

THE COURT: Was there anything—is there anything else that is concerning you?

[JUROR]: Well, all along along [sic] during the trial I was back and forth and I was real, yes, this evidence, he clearly did it and, well, no, maybe he didn't, maybe someone else did it. There has been so much admittance of perjury and it makes it really hard and it really makes me question why—it makes me question the justice system, number one, and it makes me question why these people have not been convicted of these perjuries and, you know, I—I rely on the justice system to do what's right and that puts a doubt in my mind as to what I'm hearing as to what's really the truth. I mean, even the officials, the law people, you know, the officials. And at first I said, yes, I was definitely convicted that he was and I felt somewhat under pressure by everybody else because they were strongly saying yes, and then we talked about it and because of some things that other people, you know, I'm hearing what everybody else has to say, I relied on that, and I went with that, you know, I went more towards yes, he was than not. But then I started thinking about the other case, the previous case with Mr. Barber and some testimony. I guess just when I left here yesterday the thing that really got me is, and there's so much stuff, I'm trying to take it all in, everything that was said, if I recall correctly, the people in the Suburban did say that they identified Shane as having the gun in front of the Suburban and waiving [sic] the gun and seeing him shoot the gun. If that's what brought this up, if that's the case, how come, was that told in the first trial, you know, how come, if Shane is the one, how come he wasn't convicted in the first trial for that, you know?

THE COURT: Now anything—

[JUROR]:—that's where my doubt is coming from.

THE COURT: Anything as far as questions like that or the first trial that was not evidence that was admitted during this trial, then it's not something that you-all can even consider.

[JUROR]: I understand.

THE COURT: Now I understand what you're saying about questions that might come to you out of that.

[JUROR]: I guess I'm just trying to find—I just want to know in my heart that, and I prayed about this, that I'm doing the right thing.

THE COURT: Yeah, I know. Well, you're not—no one here is critical of you, okay. You're not among enemies in this room at all and I understand what you're saying, but the answer to your question, although it may not necessarily be what you want to hear, it won't be what you want to hear, or it's not necessarily what I want to tell you is that that part is over and that there's not any changing of minds after that. I think now what we're going to do now is I'm going to let you go back to the jury room and give you a few minutes before we start, and then we'll go ahead and start with the punishment phase. After the case is over, then I might can explain and answer some questions. During the trial I'm not allowed to comment on the evidence. I can't do that. I wouldn't do that anyway, but I have to be very careful about what I say instructing jurors.

[JUROR]: I understand.

THE COURT: But the answer to your question is that that part of the trial is concluded so we're now in a second part.

[JUROR]: I understand.

THE COURT: So I appreciate you coming forward. You did the right thing. You did the exact right thing in letting us know that you were having those concerns.

[JUROR]: I was just wondering if I was able to talk to the other jurors before we came out here and just I guess verbalize my feelings and make sure what that [sic] I'm hearing is correct and that these feelings that I'm having I guess are that I'm right in feeling the way I'm feeling. You know what I'm saying.

THE COURT: Well, there's nothing that prohibits you-all from, during your deliberations, talking about the case. Okay. Right now you're not deliberating, but during your deliberations, I mean, that's what the jurors are supposed to do is discuss the evidence. So you'll have that opportunity when the case is sent back to you on punishment.

[JUROR]: Okay. I guess it's a cleansing of my conscience too.

THE COURT: And I'm glad you did what you did instead of keeping it inside of you, okay. And we'll give you a few minutes and then we'll call all of you back in. And I'm sorry we didn't have a private place. We do at my usual place, but we don't have here. Thank you.

(Juror escorted to jury room by bailiff)

[Defense Counsel]: And I move for a mistrial.

THE COURT: Any response?

[Prosecutor]: Not entitled to it. She can't impeach her verdict.

THE COURT: I'm going to deny it. Off the record now.

■ Wood argues that the comments made by the trial judge, in response to juror's expressed concerns, constituted unauthorized communication with a juror, in violation of TEX.CODE CRIM. PROC. ANN. art. 36.27 (Vernon 1981), and further constituted tampering with the jury process, commenting on the weight of the evidence, giving an improper additional instruction, and inquiring into the jury deliberation thought process.

Wood cites *Llorance v. State*, 999 S.W.2d 866 (Tex.App.-Houston [14th Dist.] 1999, no pet.), in which, while that jury was being polled, one juror began questioning the trial judge regarding whether,

if he did not agree with the verdict, the jury would have to return and deliberate further, until they did agree on a verdict. *Id.* at 867–68. After an extended discussion, the trial judge sent the jurors back, and they returned a second time with a unanimous verdict. *Id.* at 868. The Houston court held that, by failing to properly object to the trial court's actions, the appellant had waived his right to appeal. The court further determined that, even had error been properly preserved, the trial court's actions were within the jury polling requirements set out in TEX.CODE CRIM. PROC. ANN. art. 37.05 (Vernon 1981).[1]

*Llorance* does not require further jury deliberations on guilt or innocence in the present case, because the situations are different. In *Llorance* the juror's questions were raised during a jury poll, thus specifically triggering Article 37.05. In the present case no juror concern was expressed until after the verdict was read aloud, no dissent was heard, and no jury poll was requested, thus specifically triggering Article 37.04.

Wood's counsel specifically declined to request a jury poll, and the verdict was accepted. Article 37.04 provides that, when the jury agrees on a verdict, is brought back into court, and states that it so agreed, the verdict is to be read aloud. If the verdict is in proper form, no juror dissents from it, and neither party requests that the jury be polled, Article 37.04 requires the verdict to be entered in the court's minutes. The juror's remarks were made after a jury poll was waived and the verdict was accepted, in fact, the next day. Wood is not entitled, thereafter, to have the jury return and continue deliberations, as he would have been had the juror's remarks been made during a jury poll.

Wood alleges unauthorized communications between the court and the juror. TEX.CODE CRIM. PROC. ANN. art. 36.27 regulates communications between the court and jurors *during deliberations.* Questions from the jury must be in writing submitted through the bailiff, and answers thereto must be given in writing and read in open court in front of the defendant and defense counsel. Even if communications are not carried out in strict accord with this article, however, there is no reversible error when such communications do not amount to additional instructions on the law or some phase of the case, such as communications regarding "administrative matters." *Jones v. State,* 963 S.W.2d 826, 829 (Tex.App.-Texarkana 1998, pet. ref'd). Wood cites *Daniell v. State,* 848 S.W.2d 145 (Tex.Crim.App.1993). In that case, the jury was deliberating in the punishment phase, in which the state had argued for confinement in the Department of Corrections, and defense counsel had asked that the appellant be sentenced to a community corrections facility. The jury asked the trial judge whether the county jail would be such a facility, and if not, whether there were any such facilities in the county. The trial court eventually responded with a reply, over counsel's objection, that he knew of no such facilities in the county, but that there may be some nearby. *Id.* at 147. The Texas Court of Criminal Appeals found this to be reversible error, because while the additional instruction was not of a legal nature, it was an additional factual matter, not authorized by TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2002). *Daniell,* 848 S.W.2d at 147.

In contrast, Wood's jury had completed its deliberations on guilt/innocence, and its

---

1. TEX.CODE CRIM. PROC. ANN. art. 37.05 (Vernon 1981) sets out the procedure to be used for polling the jury, if either party requests it.

Under that article, if *during the poll* any juror dissents from the verdict, the jury is required to again retire to consider its verdict.

verdict had been accepted. The trial judge properly told the juror she could not subsequently change her verdict. The judge did permit her to air her personal concerns about whether she had done the right thing in view of the circumstances of this trial, i.e., that one innocent person had already been convicted in this case. The trial judge again told her that, though during deliberations she could change her mind, once the verdict had been accepted she could not.[2]

We have carefully read the record. We have found no comment on the weight of the evidence, no inquiry into the deliberative process of this jury, and no tampering with the orderly jury process. No additional instructions were given on any law impacting jury deliberations, and no additional facts were presented to the jury. The trial judge did not comment on the evidence at the completed guilt/innocence phase. She did not, and could not, comment on punishment evidence, since none had been produced, and did not state anything to indicate what punishment would be appropriate.

■ Even if there were error in any aspect of the trial court's actions, there could have been no effect on the guilty verdict, which had already been accepted by that time. And we see no effect on the punishment phase, which had not then begun.

Finding no reversible error, the judgment of the trial court is affirmed.

**2.** Tex.R. Evid. 606(b) provides that, on an inquiry into the validity of a verdict, a juror may not testify as to any matter or statement occurring during jury deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent or dissent from the verdict.

In *Bennett v. State,* 742 S.W.2d 664, 675 (Tex. Crim.App.1987), *vacated & remanded on other grounds,* 486 U.S. 1051, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988), the Texas Court of Criminal Appeals held that a juror's changing his or her vote to avoid a hung jury does not entitle the defendant to a new trial.