

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. PD-0344-12
---

**DAVID COOK, Appellant**

**v.**

**THE STATE OF TEXAS**

---
### ON STATE'S AND APPELLANT'S
### PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### DENTON  COUNTY
---

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, and ALCALA, JJ., joined.  KELLER, P.J., filed a concurring opinion.  HERVEY, J., filed a concurring opinion in which KEASLER, J., joined.

O P I N I O N

A jury convicted appellant of manslaughter and returned a punishment verdict of six years' confinement with a recommendation that it be probated.  The trial judge formally sentenced appellant.  Nearly forty-five minutes later, the same "jury"  returned a second punishment verdict of six years' confinement with no recommendation that it be probated.  The trial judge again sentenced appellant.  What happened between those two formal

sentencing pronouncements is only partially reflected in the record.  On appeal, appellant

sought reinstatement of his probated sentence.  The court of appeals held that the trial judge's

decision to reconvene the jury under the particular facts in this case was harmful error, and

it remanded the case to the trial court for a new punishment hearing.  Neither party was

satisfied with this resolution.  The State argues that the court of appeals should have found

the error forfeited.[1]  Appellant argues that the court of appeals should have reinstated his

original, probated sentence.[2]  We conclude that appellant preserved this re-sentencing issue

for appellate review, and we reinstate his original, probated sentence.

## I.

Appellant was speeding southbound on a rural farm-to-market road in his silver 1999

Ford Taurus when he drove by an officer parked on the northbound shoulder.  Appellant

looked over his shoulder to see if the officer was turning around.  As he did so, appellant

inadvertently crossed into the northbound lane, hit a car driven by Kirk Wyborg head on, and

killed him.  Appellant, who was twenty years old at the time, told a responding paramedic

that he had been driving 110 miles per hour.  At trial, appellant did not recall saying that and

---

[1] The State asks:  "Whether the Court of Appeals improperly found that Appellant's sole issue was preserved for appellate review where his objection at trial (motion for mistrial) was not timely made and was not specific enough to apprise the trial court of the complaint he makes on appeal (the trial court erred in reconvening jury and accepting new punishment verdict)."

[2] Appellant asks, "If a trial judge accepts a jury verdict, releases the jurors from their oaths, allows the former jurors to leave the courtroom and tells them they are free to discuss the case, sentences the defendant in accordance with the legal verdict, and then improperly reconvenes the jury for a second deliberation over objection, should the court of appeals reform the judgment to reflect the only proper, legal verdict?"

testified that his Taurus "tops out" at 90 miles per hour.  Regardless, he admitted that he sped, drove recklessly, failed to yield, and caused the accident that killed Mr. Wyborg.  The only issue before the jury was whether appellant committed manslaughter or criminally negligent homicide.  The jury found him guilty of manslaughter.

The State put on no new evidence in its punishment case-in-chief.  Appellant testified that he had never been previously convicted of any crime and asked the jury to recommend probation.  In rebuttal, the State called Mr. Wyborg's son and wife, and they asked the jury to send appellant to prison.  Appellant's attorney argued for a probated sentence of less than ten years.  The State argued for a non-probated sentence–one of at least sixteen years.

Deliberations began at 3:06 p.m.  The jury soon sent the trial judge a note asking, "Can we recommend a specific amount of time in prison and another amount of time on probation?"  At 3:26 p.m., without objection, the trial judge referred the jury back to the written charge and instructed them to continue deliberating.  At 4:28 p.m., the jury returned its verdict, and the trial judge read the signed verdict form aloud:

> We, the jury, having found the Defendant, DAVID COOK, guilty of the offense of Manslaughter, assess his punishment at confinement . . . for six years . . . .
> We further find the defendant has never been convicted of a felony in this state or any other state, and we recommend probation of the penitentiary time.

The judge asked the presiding juror, "Is that the unanimous verdict of the jury?"  He stated, "It is."  Neither side requested a jury poll.  The judge thanked the jurors and discharged them.

> Ladies and gentlemen, thank you very much for your service . . . . You are now discharged from the instructions I gave you earlier. You are free to discuss the

case if you want to, but you are under no obligation to discuss the case with anyone. Sometimes the attorneys want to talk to you after the fact just . . . to find out what your thoughts are and your impressions about the process are. You're free to do that if you want to, but you do not have to.  You're now discharged. Thank you very much.

The jury left the courtroom at 4:30 p.m., and the judge then sentenced appellant.

Trial Judge:    We want to take a short recess?  Do you want to discuss anything with the jury before you do that, or you want to go right into sentencing?

Prosecutor:    We're ready to proceed, Judge.

Trial Judge:    All right.  Be seated. Anything else before I proceed?

Prosecutor:    Judge, the only thing, at this point I'd request the Court assess 180 days as a condition.

Trial Judge:    All right, Mr. Cook, a jury having found your–found you guilty and set your punishment at six years–a six-year confinement, probated, I am going to now impose sentence as set by the jury. I'm sentencing you to six years confinement . . . .  I will probate that for a period of six years.  There is no fine associated with that.  You will be required to complete the maximum amount of community service–which is how much in this case?  240?  Correct?

Prosecutor:    I believe it's 400, Judge.

Trial Judge:    Four hundred?  Four hundred hours of community service.  I'm sentencing you to 180 days confinement in the Denton County Jail as a condition of your probation.  That sentence is to begin immediately. Anything else?

Prosecutor:    Nothing else on the record, Judge.

Trial Judge:    All right.  We're off the record.

(Brief recess.)

(Open court, Defendant present.)

Trial Judge:    Bring them out.

(The jury entered the courtroom at 4:37 p.m.)

Trial Judge:    Be seated . . . It has been brought to my attention that the jury had some question about perhaps the verdict or the verdict form. I'm going to read–well, I'm going to restate what I read here that you have assessed. You have assessed as punishment at six years confinement in the penitentiary. However, you recommended that that time be probated. That is the sentence that I have imposed, so I'm going to ask you individually if that, in fact, was the sentence that you intended and that you voted for? And do we have a list of the jurors here? All right. As I read your name, I need you to either say yes or no, no meaning that was not the sentence you intended.[3]

The judge called four jurors' names.  Each said "no."

Trial Judge:    Do we need to go any further than this?

Prosecutor:    I don't think so, Judge.

Trial Judge:    All right. What I'm going to do at this point is to send you back to the juryroom to continue deliberating. Please go with the bailiff.

(The jury left the courtroom at 4:39 p.m.)

Defense:        Judge, I move for a mistrial.

Trial Judge:    All right. That motion is denied.

(Proceedings recessed while the jury deliberated.)

(Open court, Defendant present.)

Trial Judge:    Bring them in, please.

Prosecutor:    Judge, we will be asking to poll the jury this time.

---

[3] There is no suggestion in this record, nor do the parties argue, that the jury had originally filled out and signed two different verdict forms, and then the trial judge simply did not notice that the jury had returned conflicting verdicts.  It would have been nigh impossible for the trial judge to have failed to notice two conflicting verdict forms on the same page.  A copy of the verdict form is attached to this opinion.

Trial Judge:   I think that might be prudent.

At 5:11 p.m., the jury returned to the courtroom and delivered a second verdict assessing six years' confinement.  The paragraph recommending probation had been crossed out and initialed by the presiding juror.  The trial judge polled the jury, and each juror responded that the second verdict was his or her verdict.  She re-thanked the jurors and re-released them, and then re-sentenced appellant to six years in prison.

On appeal, appellant claimed that the trial judge erred when she reconvened the discharged jury, required that jury to deliberate again, and accepted a new punishment verdict.  He asked the court of appeals to "reform the judgment to reflect the initial, valid, legal verdict given by the jury."[4]  The court of appeals agreed that the trial judge improperly reconvened the jury to reconsider its verdict:  "Here, the jurors separated from the visual presence of the trial court, were instructed that they were free to discuss the case with outsiders, and may have been susceptible to outside influence."[5]  The court concluded that appellant was harmed because the jury substantively changed its written verdict from one that recommended probation to one that did not. But the court held that appellant was entitled to the specific relief he asked for at trial–a mistrial (and, hence, according to the court of appeals,[6] a new punishment trial)–rather than the relief he asked for on appeal–reinstatement

[4] Appellant's Brief on Direct Appeal at 18.

[5] *Cook v. State*, 361 S.W.3d 235, 240 (Tex. App.–Fort Worth 2012).

[6] *Id.* at 242.

of the jury's original punishment verdict.

Justice Dauphinot disagreed and would "correct the judgment to reflect the sentence lawfully pronounced in open court before the jury was unlawfully recalled."[7]

Neither party complains about the court of appeals's resolution of the merits: the trial judge erred by recalling the discharged jury and having it re-deliberate after appellant had been formally sentenced. We limit our review to that court's implicit preservation decision[8] and its judgment remanding the case for a new punishment hearing.

II.

A.    **Preservation**

The State asserts that the court of appeals should not have reached the merits of appellant's complaint because he failed to comply with Texas Rule of Appellate Procedure 33.1(a).[9]    According to the State, appellant's "mistrial" objection was neither timely nor

---

[7] *Id.* at 244 (Dauphinot, J., dissenting).

[8] The court of appeals was not asked to address any issue concerning preservation of error, and it did not do so *sua sponte*.

[9] The State did not raise this issue in the court of appeals, but we may address a procedural default question that is raised for the first time in a petition for discretionary review. Because the State prevailed at trial, it was not required to raise any allegations before the court of appeals. The Rules of Appellate Procedure require an appellant to file a brief but impose no such requirement on an appellee. Regardless of whether an appellee files a brief, a first-level appellate court has the obligation to conduct a thorough review of an appellant's claims, including any subsidiary issues that might result in upholding the trial court's judgment. An appellee's failure to make a particular argument is a factor that may be considered when this Court decides whether to exercise its discretion to grant review, but it does not bar this Court from granting review to address the issue if the Court, in its discretion, decides that review is warranted.

specific. It was untimely because it was not made until after the jurors were sent back to the jury room to re-deliberate, and it "was not specific enough to preserve for appellate review his current complaint–that the trial court erred in reconvening the jury and accepting a new punishment verdict."[10] Thus, appellant's claim is forfeited.[11]

We disagree. We conclude that appellant's "mistrial" motion preserved error for appellate review because it was timely and specific, and he obtained an adverse ruling. First,

---

*Volosen v. State*, 227 S.W.3d 77, 80 (Tex. Crim. App. 2007) (citation omitted). Preservation of error is one such "subsidiary" issue that we may address. *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).

[10] State's Brief at 8.

[11] Appellant responds that the trial judge's imposition of the second sentence verdict was not a forfeitable irregularity. He claims that the right to have the judge adhere to the valid, legal verdict under which he was first sentenced is a *Marin* category-one, "absolute requirement" that is not subject to forfeiture by the failure to object. *Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004) ("A 'systemic requirement' (also known as an 'absolute requirement or prohibition') is a law that a trial court has a duty to follow even if the parties wish otherwise. Any party that is entitled to appeal may complain on appeal that such a requirement was violated, even if the party failed to complain about the failure or waived the application of the law.") (citing *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993)).

Appellant argues that Article 37.04 requires action on the part of the trial judge regardless of the wishes of the parties. TEX. CODE CRIM. PROC. art. 37.04 ("When the jury agrees upon a verdict, it shall be brought into court by the proper officer; and if it states that it has agreed, the verdict shall be read aloud by the judge, the foreman, or the clerk. If in proper form and no juror dissents therefrom, and neither party requests a poll of the jury, the verdict shall be entered upon the minutes of the court."). Appellant reasons that he accepted the jury's verdict as read and affirmed in open court, and he was under no obligation to insist upon its proper entry and execution following formal sentencing. Likewise, he was under no obligation to point out to the trial judge the prohibition against reconvening a jury to re-deliberate after that jury has returned a valid verdict, the jurors have separated beyond control of the judge, and the defendant has been formally sentenced by the judge, because any "second" sentence would be an illegal one. And a party is not required to make a contemporaneous objection to the imposition of an illegal sentence. *Mizell v. State*, 119 S.W.3d 804, 806 n.6 (Tex. Crim. App. 2003) ("Unlike most trial errors which are forfeited if not timely asserted, a party is not required to make a contemporaneous objection to the imposition of an illegal sentence.") (citation omitted).

the motion was timely. Counsel moved for a mistrial as soon as the trial judge told the former jurors to return to the jury room for a second deliberation. The State argues that, to be timely, appellant should have objected as soon as the trial judge said "Bring them in." But the trial judge's actions were not objectionable until she sent the discharged jurors back to deliberate again. Up until that point, defense counsel may have wondered, "What is going on here? Why is the judge polling the former jurors after they have been disbanded? This is unorthodox, but my case is finished. My client got probation. And jurors can't change their minds after formal sentencing." He had no reason to think his client's previously imposed sentence would "disappear" until the trial judge sent the discharged jurors back into the jury room. As soon as that occurred, he moved for a mistrial. Appellant was not required to be clairvoyant and anticipate that the trial judge would improperly send the dispersed jurors off to re-deliberate after sentencing until she actually did so.

Second, the "mistrial" motion informed the trial judge and opposing counsel of appellant's complaint: Everyone understood that defense counsel was saying "Stop this proceeding–whatever it is." Indeed, the very word "mistrial" means "[a] trial that the judge brings to an end, without a determination on the merits, because of a procedural error or serious misconduct occurring during the proceedings."[12] The basis for the motion was

---

[12] BLACK'S LAW DICTIONARY (9th ed. 2009). A former edition provides a more expansive definition:

> An erroneous, invalid, or nugatory trial. A trial of an action which cannot stand in law because of want of jurisdiction, or a wrong drawing of jurors, or disregard of some other fundamental requisite before or during trial. . . . A device used to halt trial proceedings when error is so prejudicial and fundamental that expenditure of

obvious from the post-sentencing context.[13]  At oral argument the parties agreed that there was no simple, appropriate legal objection.[14]  We question whether the trial judge or the prosecutor could have cured or ameliorated the problem in any way other than by stopping the unauthorized second sentencing deliberation.[15]  "Stop" or "I request a mistrial" is as good

---

further time and expense would be wasteful if not futile[.]
BLACK'S LAW DICTIONARY 1002 (6th ed. 1990).  Thus, a mistrial puts an end to trial proceedings, while the request for a "new trial" recognizes a completed trial which, for sufficient legal reasons, has been put aside so that the issues may be tried again.  The objection of "I request a mistrial" seeks to stop the invalid proceedings, while the request for a "new trial" seeks to put aside a completed trial and start over again.

[13] *See Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009).

[14]  In its brief, the State argued that appellant's mistrial motion was not specific enough to put the prosecutor on notice that he needed to establish, on the record, that the jury had remained an undispersed unit and had not been subjected to any outside influence between the discharge and reassembly.  The State would have defense counsel say something along the lines of: "I object.  Jurors can't be made to re-deliberate after sentencing unless the record shows that the jury has not been discharged or has not had any outside influence and the record does not show that here."  The prosecutor would then have had a chance to ask "the trial court to hold a hearing to determine whether the jurors had remained together or had been subject to any sort of outside influence during the interval between discharge and reassembly." State's Brief at 9.

[15] At oral argument, counsel for the State pointed to a 1977 Florida case in which "less than a minute transpired before it was discovered that the jury had in fact as to count one of the information returned two inconsistent verdicts. The jury was immediately recalled. . . .  There is nothing in the record to reflect that the jury had in fact separated and gone their separate ways. On the contrary the fact that they were so readily re-assembled indicates to the contrary. As we stated above there is not any evidence that the jury had communicated with any outsider or that any outside influence was exerted upon them, or attempted." *Masters v. State*, 344 So. 2d 616, 620 (Fla. Dist. Ct. App. 1977).  The court then explained that "[t]he burden is upon the appellant to establish that any such communication with or influence upon the jury had occurred. In fact he has not even suggested any such and therefore, he has not met this burden." *Id.*
This case is not like *Masters*, in which the court discovered a problem with the verdict form and recalled the jurors to correct that obvious problem.  Here, the original verdict form was complete, correctly filled out, and signed.  This was a valid, legal verdict.  Instead, we can only assume that some jurors talked to someone about something and that conversation–whatever it was–was recounted to the judge and led to her recalling the dismissed jurors.

an objection as any under these circumstances.

There is no getting around the fact that appellant had already been sentenced and the discharged jury had dispersed outside the presence of the trial judge for seven minutes–a substantial amount of time under the circumstances. The jurors had been expressly told that they could talk about the case with others, and they obviously did; otherwise, the trial judge would not have reassembled them. Although we do not know the content of the jurors' discussions or the persons with whom they spoke, a lot of conversation can occur in seven minutes. As the court of appeals noted, there are only a couple of Texas cases discussing the reassembly of a jury to amend or correct a verdict, and in those cases the jurors had not departed out from under the watchful eye of the court.[16] And in those cases the defendant had not already been formally sentenced.[17]

---

[16] The court of appeals explained,
> The circumstances described in *Webber* [*v. State*, 652 S.W.2d 781, 782 (Tex. Crim. App. 1983)] and *West* [*v. State*, 340 S.W.2d 813, 814-15 (Tex. Crim. App. 1960)] represent narrow exceptions to the principle that when a jury has been discharged, it loses its identity as a jury, and it therefore may not redeliberate and assess a different punishment. . . . But the facts in this case do not match those in *Webber* and *West*. In each of those cases, when the trial court ordered the jury to reconvene, the jurors were still within eyesight of the trial court so that the trial court knew, and the record affirmatively disclosed, where the jurors had been and who they had talked to. Here, the jurors separated from the visual presence of the trial court, were instructed that they were free to discuss the case with outsiders, and may have been susceptible to outside influence.

*Cook v. State*, 361 S.W.3d 235, 240 (Tex. App.—Fort Worth 2012).

[17] *Webber*, 652 S.W.2d at 782 ("The defendant requested ten days for sentencing. The court granted the request"); *West*, 340 S.W.2d at 815 ("The Court then accepted the corrected verdict over defendant's properly recorded objection and exception to the court's ruling and proceeded to sentence the defendant in accordance with the corrected verdict which found him guilty of driving while intoxicated.").

At the time appellant moved for a mistrial, the trial was over.  The original punishment verdict was certain, consistent, and valid.  It was not inconclusive, ambiguous, or legally incorrect.[18]  Appellant had been formally sentenced in accord with that valid punishment verdict.  The fat lady had sung.

Counsel was objecting to a "do-over," a unauthorized post-trial proceeding that was not a part of the trial.  His "mistrial" objection was good enough to convey "Stop."  And he got an immediate adverse ruling.  He complied with the requirements of Rule 33.1(a) by registering his complaint at a time when there was an opportunity to respond to it or cure it by stopping the unauthorized procedure.

We therefore conclude that the court of appeals properly made an implicit finding that appellant's sole issue was preserved for appellate review.

## B.    Remedy

Appellant claims that the only proper remedy is to reinstate the jury's original, probated verdict.  He points to the mandatory language in Rule 43.3, dealing with the judgment of the court of appeals:

> 43.3 *Rendition Appropriate Unless Remand Necessary*.  When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further

---

[18] *Cf. Reese v. State*, 773 S.W.2d 314, 317 (Tex. Crim. App. 1989) ("An incomplete or unresponsive verdict should not be received by the court. It is not only within the power, but it is the duty of the trial judge, to reject an informal or insufficient verdict, call to the attention of the jury the informality or insufficiency, and have the same corrected with their consent, or send them out again to consider their verdict.") (internal citations omitted).

proceedings; or (b) the interests of justice require a remand for another trial.[19]

Appellant states, "In this case, the interest of justice expressly requires the rendition of the appropriate judgment, the reinstatement of the only legal verdict and the appellant's probation. No further facts or additional enlightenment can happen during a remand."[20]

The State argues that this rule required a remand for a new punishment hearing because reinstating the original verdict would give effect to a jury verdict that did not reflect the jury's true intent: "Here, the record supports that the jury foreman mistakenly included probation within the first punishment verdict. . . . In the interests of justice, another punishment trial–a further proceeding–should be held in order to obtain a true punishment verdict."[21]

The State also suggests that appellant should not be allowed to complain about the appellate court's remand because "a mistrial" is what he asked for at trial. The court of appeals agreed with the State, noting, "Based on the discrepancy between the relief sought by appellant at trial (mistrial) and the relief sought on appeal (judgment on the jury's first, unintended, verdict), we cannot impose a modified or reformed judgment." [22]

But a new punishment hearing is not what appellant asked for at trial. He had no

---

[19] TEX. R. APP. P. 43.3.

[20] Appellant's Brief at 26.

[21] State's Response Brief at 7.

[22] *Cook*, 361 S.W.3d at 242-43.

complaint about his trial–a trial that was over and done with.  He had already been sentenced to probation.  It is simply illogical to interpret his mistrial motion as a desire for a whole new punishment hearing.[23]  Article 44.29 provides for a punishment retrial when reversible error occurs during or in the punishment stage,[24] but, as Justice Dauphinot explained, the error in this case occurred *after* the punishment stage:

> Here, no error was made during the punishment phase of the trial. The error was made *after* the punishment hearing and *after* the jury decided the punishment issue. The problem  with remanding this case for a new trial on punishment is that the jury had finished its job of assessing Appellant's punishment before the trial court erred. The jurors determined guilt and determined punishment in a proper form. The trial court accepted the verdict and imposed the jury's punishment in open court. Appellant's sentence was probated, and he did not ask for a new trial. The trial had ended.[25]

Rule 43.3 required the court of appeals to render the judgment that the trial judge should have rendered: A sentence of six years, probated.  "Once a valid sentence is pronounced by a trial court, generally, it is accorded a measure of finality."[26]

---

[23]  As we explained in footnote 12 *supra*, the terms "mistrial" and "new trial" do not mean the same thing.  Appellant asked to stop the invalid proceeding by requesting a mistrial; he never asked for a new trial or a new sentencing hearing.

[24] TEX. CODE CRIM. PROC. art. 44.29(b) ("If the court of appeals or the Court of Criminal Appeals awards a new trial to a defendant other than a defendant convicted of an offense under Section 19.03, Penal Code, only on the basis of an error or errors made in the punishment stage of the trial, the cause shall stand as it would have stood in case the new trial had been granted by the court below, except that the court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage of the trial under Subsection (b), Section 2, Article 37.07, of this code.").

[25] *Cook*, 361 S.W.3d at 244 (Dauphinot, J., dissenting).

[26] 43A GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 46:14, at 21 (3d ed. 2011); *Ex parte Hayden*, 215 S.W.2d 620, 622 (Tex.

The State points to the post-trial polling of four jurors as proof that the first verdict was not the "true" verdict.[27]  But we do not know what happened after the jurors had been discharged.  We do know that probation was considered during the original deliberations because the jury sent out a note asking whether it could recommend a specific amount of time in prison and another amount of time on probation.  It was told to refer back to the charge. One hour later, the jury came back with the verdict of six-year probated sentence.

Furthermore, when the jurors were told to re-deliberate, they did so for over thirty minutes.  If the original verdict had been simply a clerical error and all jurors were always opposed to probation, the re-deliberation would have been quick–a couple of minutes at the most.  Commentators have noted that a "question, which has vexed courts for years, is how far can the legal system go in opening verdicts to attack . . . before the cure becomes worse than the disease."[28]  The cure imposed by the court of appeals in this case–a new punishment

---

Crim. App. 1948) ("In felony cases, it is the duty of the judge to pronounce sentence on the judgment of conviction, and the sentence is in fact the final judgment of the case.").  In *State v. Aguilera*, 165 S.W.3d 695, 697-98 (Tex. Crim. App. 2005), we recognized that, if the defendant elects sentencing by the judge, the trial judge retains plenary power to modify his sentence on the day sentence is pronounced, before court adjourns for the day.  *See id.* at 699 ("this is a 'sauce for goose is sauce for gander' rule which protects both defendants and society-at-large from a trial judge's accidental misstatements or momentary mistakes.") (Cochran, J., concurring).  There is no analogous rule for a jury modifying its sentence after it has been discharged, and the defendant has been formally sentenced in accord with that valid verdict.

[27] The record is silent on who prompted the trial judge to poll the jury.  In any event, this was not an Article 37.05 poll because it took place after the verdict had been accepted and appellant had been sentenced.

[28] STEVEN GOODE, OLIN GUY WELLBORN III & M. MICHAEL SHARLOT, 1 TEXAS PRACTICE: GUIDE TO THE RULES OF EVIDENCE § 606.2, at 673 & 675-76 (3d ed. 2002) (discussing Rule 606).  We note that the rationales that support the prohibition of unrestricted

trial–is worse than the disease.  It is no remedy for the improper "do-over" that occurred in this case to have a second "do-over" by a new jury.  The cure for any untrue or unintended verdict is already in place–the right to have the jury polled before it is discharged.[29]  Neither party asked to have the jury polled.[30]  The trial judge, content to rely on the presiding juror's confirmation that the six-year probated sentence was "the unanimous verdict of the jury," accepted that legal verdict, discharged the jury, and sentenced appellant in open court.  We therefore modify the lower court's judgment to reflect the original sentence of six years' imprisonment with probation of the penitentiary time, and we affirm the judgment as modified.[31]

---

probing into jury deliberations also support the prohibition of revisiting a criminal verdict by a discharged jury whose members have separated.  *See State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 212-13 (Tex. Crim. App. 2003) (Cochran, J., concurring) ("Maintaining the secrecy of jury deliberations has traditionally been supported by five distinct rationales: 1. preventing tampering with the jury by outside influences; 2. protecting the jury from post-verdict harassment; 3. protecting the finality of jury verdicts; 4. protecting robust freedom of debate during deliberations; 5. promoting community trust in the jury.") (footnotes omitted).

[29] Article 37.05 of the Code of Criminal Procedure provides:
The State or the defendant shall have the right to have the jury polled, which is done by calling separately the name of each juror and asking him if the verdict is his. If all, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answer in the negative, the jury shall retire again to consider its verdict.

[30] The right to a jury poll is forfeited by the failure to request it before the verdict is accepted.  *Mathis v. State*, 471 S.W.2d 396, 398 (Tex. Crim. App. 1971) (when party does not request a jury poll, the right is waived); *Wood v. State*, 87 S.W.3d 735, 739 (Tex. App.–Texarkana 2002, no pet.) ("The juror's remarks were made after a jury poll was waived and the verdict was accepted, in fact, the next day. Wood is not entitled, thereafter, to have the jury return and continue deliberations, as he would have been had the juror's remarks been made during a jury poll.").

[31] TEX. R. APP. P. 78.1(b).

Delivered: January 30, 2013
Publish

VERDICT FORM

(PRESIDING JUROR TO SIGN ONLY ONE)

We, the jury, having found the defendant, DAVID COOK, guilty of the offense of Manslaughter, assess his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for ___6___ years. [write in any term of not more than twenty (20) years nor less than two (2) years. In addition to such confinement, assess a fine of $___0___ (write in any amount not to exceed $10,000 or "none").

_____
PRESIDING JUROR

We, the jury, having found the defendant, DAVID COOK, guilty of the offense of Manslaughter, assess his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for ___6___ years. [write in any term of not more than ten (10) years nor less than two (2) years]. In addition to such confinement, assess a fine of $___0___ . (write in any amount not to exceed $10,000 or "none").

We further find the defendant has never been convicted of a felony in this State or any other State, and we recommend probation of the penitentiary time.

_____
PRESIDING JUROR

4

We, the jury, having found the defendant, DAVID COOK, guilty of the offense of Manslaughter, assess his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for _____ years. [write in any term of not more than ten (10) years nor less than two (2) years]. In addition to such confinement, assess a fine of $_____. (write in any amount not to exceed $10,000)

We further find the defendant has never been convicted of a felony in this State or any other State, and we recommend probation of both the penitentiary time and the fine assessed.

_____
PRESIDING JUROR

5

7