# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00125-CR

---

**Gabino Hernandez-Dominguez, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-17-206863, HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Gabino Hernandez-Dominguez of the second-degree felony offense of aggravated assault with a deadly weapon-family violence for threatening imminent bodily injury with a knife to his live-in girlfriend. *See* Tex. Penal Code § 22.02(a)(2), (b); *see also id.* § 12.33 (setting punishment range of two to twenty years' imprisonment for second-degree felonies). The jury assessed punishment at eight years' imprisonment and returned a verdict form leaving open space in the portion for recommending that the court suspend the assessed sentence and place Hernandez-Dominguez on community supervision. *See* Tex. Code Crim. Proc. art. 42A.055(a). The district court read the jury's punishment verdict aloud in open court and confirmed with the presiding juror that this was the jury's verdict. Hernandez-Dominguez declined polling the jury.

On appeal, Hernandez-Dominguez contends that the jury's punishment verdict reflects a community-supervision recommendation and that his judgment of conviction should be modified to reflect that his sentence was "probated." We will affirm the district court's judgment of conviction.

**BACKGROUND[1]**

**Evidence during guilt-innocence phase**

The jury heard evidence that a neighbor in Hernandez-Dominguez's four-plex awoke after hearing a "banging noise" and a female voice "crying out" from downstairs at 4:00 a.m. The neighbor called 911. An audio recording of her 911 call was admitted into evidence.

Austin Police Department officers responded to the scene in south Austin. A woman, later identified as Hernandez-Dominguez's girlfriend, answered the door crying and ran out. Through the open door, officers saw a man, later identified as Hernandez-Dominguez, pacing back and forth while "sweating profusely." His pockets were full of bulging items, and he was holding a broken glass in one hand and a wall thermostat in the other. After police officers told him that they wanted to talk to him, Hernandez-Dominguez allowed them inside. He continued to exhibit "odd behavior," and when he threw the broken glass from his hand into a bedroom and began punching a bedroom door, officers decided to frisk him for weapons. He struggled with the officers and was placed in handcuffs. A video recording from the dashboard camera of a patrol car parked facing the front of the four-plex, which captured sounds of

---

[1] Because Hernandez-Dominguez raises no challenge to the sufficiency of the evidence supporting his conviction, we provide only a brief summary of the facts underlying his conviction. *See* Tex. R. App. P. 47.1 (requiring issuance of opinion that is brief as possible but addresses every issue raised and necessary to final disposition of appeal).

Hernandez-Dominguez's yelling, was admitted into evidence. Officers recovered a knife with a six-or-seven-inch blade from the scene.

Another officer spoke with Hernandez-Dominguez's girlfriend, who stated that Hernandez-Dominguez had not slept in six days, that he had been sharpening knives in the kitchen, and that he had threatened her with a knife. She also mentioned that he had white powder in his nostril, and officers suspected that cocaine use was involved.

Hernandez-Dominguez's girlfriend testified that she had been living with him at the time of the incident and that they had been dating for over two years. On the date of the offense, she awoke to a loud noise, and when she saw Hernandez-Dominguez in the kitchen she asked him why he had not gone to bed yet. He got two knives, began sharpening them against each other, and approached her asking, "What do you want, you f—g bitch, do you want me to kill you?" She tried to calm him by telling him that he was sleep deprived. He threw the knives in the kitchen sink and said, "Oh, so you're not afraid of these." He grabbed a bigger knife and pointed it within five inches from her stomach asking, "Do you want me to kill you?" Fearing that he might stab her with the knife if she argued with him, she asked him to calm down. He spit in her face. Then he returned to the kitchen; put the knife back; and tried to hit her with other objects, including a picture frame and a bench or stool that he threw near her feet. She yelled loudly. Shortly afterward, she saw patrol-car lights through a window of the apartment.

After his arrest, Hernandez-Dominguez called his girlfriend from jail, repeatedly asking her to withdraw the charges against him. He told her that he had done nothing to her and that "[i]t's [her] fault" but that he forgave her "for having sent the cops after [him]." A redacted transcript of Hernandez-Dominguez's jail phone call to his girlfriend was admitted into evidence without objection.

3

Hernandez-Dominguez testified in his own defense. He stated that he was originally from Mexico and had lived in Austin for about five years by the time of the offense. He admitted that he was high on cocaine when his girlfriend began arguing with him, but he denied threatening her with a knife. He claimed that she was angry because she had previously seen him with another woman and suspected that instead of going to work that day, he had been with the other woman again. He also stated that his cocaine use was "just a problem that [his girlfriend] brings out" because of the way that she treats him. At the conclusion of the guilt-innocence phase, the jury convicted Hernandez-Dominguez as charged.

**Evidence during punishment phase**

After the guilty verdict and outside of the presence of the jury, the parties briefly attempted to reach a sentencing agreement. But Hernandez-Dominguez's counsel informed the district court, "My client says that he is only willing to accept a prison sentence that is probated." Thus, the case proceeded to the punishment phase before the jury, during which it heard about Hernandez-Dominguez's criminal history, consisting of a 2006 misdemeanor conviction for the offense of resisting arrest. The jury also heard testimony from Hernandez-Dominguez's girlfriend and a court liaison for probation.

Hernandez-Dominguez's girlfriend testified about other assaults that Hernandez-Dominguez had perpetrated against her. She said that he had once accused her of sleeping with his co-worker, who was renting a bedroom in their apartment, and that Hernandez-Dominguez pushed her against a wall and slapped her face causing a nosebleed and a cut inside her cheek. She also testified about another incident that occurred when she refused to take Hernandez-

4

Dominguez to buy beer. He grabbed her by her hair, forced her to crawl to the parking lot, and threw her to the ground.

The court liaison testified about probation obligations and types of services available to defendants who are convicted and placed on probation. She also testified about the difficulties of supervising a probationer who is not a United States citizen, noting that the probationer might be detained by immigration enforcement or deported during his probationary period, complicating the completion of probation services. She stated that when a probationer is deported, his probation does not cease, and that he may report by mail. However, her experience was that probationers did not faithfully report after being deported, and that such cases typically remained open with an active warrant for violation of community supervision. She acknowledged the possibility that a probationer might never serve his sentence after deportation.

At the conclusion of the evidence on punishment, the district court provided the parties with the court's proposed charge on punishment. Hernandez-Dominguez had no objections to that charge and made no requests for additions to or deletions from it. Because Hernandez-Dominguez filed a pretrial application for community supervision alleging that he "ha[d] not been convicted of a felony in this state or any other state," the charge included that punishment option. The charge also included an instruction to the jury that if they did not want to recommend his placement on community supervision, they should say nothing about it in their verdict: "If you do not desire to grant community supervision to this defendant, you will say nothing in your verdict concerning the same."

During closing arguments on punishment, the prosecutor told the jury that if they were to recommend probation, "the only sentence you need to give, the only sentence whatsoever is 10 years [of community supervision]. Anything less than that is not an [e]ffective

5

enough deterrent. Ten years is the maximum sentence." Defense counsel told the jury during closing that if they determined that Hernandez-Dominguez should not have his sentence probated, they were not required to assess punishment at more than ten years' imprisonment: "You can give him any term. . . . If you give him four years, you can say we think he should serve four years in prison, and we don't think it should be community supervision. That's what the verdict form shows you in the back." Defense counsel also noted the two-part determination that the jury was asked to make in its verdict: "You're going to first be asked to assess a sentence, and then if it's two to ten years, whether or not it should be community supervision or not, but you are not bound to automatically give him community supervision if his sentence is under ten."

**Jury verdict on punishment**

After deliberations, the jury returned the following verdict on punishment:

**VERDICT OF THE JURY**

We, the Jury, having found the defendant, Gabino Hernandez-Dominguez, guilty of Aggravated Assault with a Deadly Weapon Family Violence, assess his punishment at confinement in the Texas Department of Criminal Justice, Institutional Division, for a period of **8** (2 to 20 years). In addition, we assess a fine of $ **0** (0 to 10,000).

**(If the above sentence is 10 years or less, please proceed to consider the next paragraph)**

We further find that the defendant has never been convicted of a felony in this state or in any other state and we recommend that the sentence be suspended and the defendant be placed on community supervision:

[completed with signature]
Presiding Juror

6

[completed with printed name]_____
Printed Name of Presiding Juror

The district court read the jury's eight-year-imprisonment sentence aloud in open court and confirmed with the presiding juror that this was the jury's verdict. Hernandez-Dominguez declined polling the jury. The district court accepted the jury's verdict, pronounced sentence, and signed the judgment of conviction that is challenged in this appeal.

## DISCUSSION

Hernandez-Dominguez contends that the jury's punishment verdict reflects a community-supervision recommendation that the district court was required to follow and that his judgment of conviction should be modified to reflect that his eight-year sentence was "probated." He states that the presiding juror's signature on the line immediately after the last paragraph of the verdict form indicates the jury's "agreement with the entire verdict, including the sentence recommending probation" because "there is no choice to be made on the verdict form beyond the colon." He further states that because the jury was removed from the courtroom—after the district court confirmed that no one wanted a jury poll—the jury did not hear the sentencing pronounced in open court and "had no opportunity to learn that [Hernandez-Dominguez]'s prison sentence was not probated as they had recommended."

Article 42A.055 of the Code of Criminal Procedure, which addresses jury-recommended community supervision, requires a trial court to suspend an imposed sentence of confinement and place a defendant on community-supervision if a jury's verdict recommends it:

> [a] jury that imposes confinement as punishment for an offense may recommend to the judge that the judge suspend the imposition of the sentence and place the defendant on community supervision. A judge shall suspend the imposition of the

7

sentence and place the defendant on community supervision if the jury makes that recommendation in the verdict.

A defendant is eligible for community supervision under this article only if:

(1) before the trial begins, the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state; and

(2) the jury enters in the verdict a finding that the information contained in the defendant's motion is true.

*Id.* art. 42A.055(a), (b); *Mayes v. State*, 353 S.W.3d 790, 795-96 (Tex. Crim. App. 2011) ("The jury does not determine the period of community supervision. It assesses the sentence and recommends that the trial judge place the defendant on community supervision. The judge must follow that recommendation, but he has the discretion to determine the appropriate period of supervision, as long as it is within the minimum and maximum statutory periods."). Hernandez-Dominguez essentially contends that the district court violated article 42A.055(a) by not granting community supervision and that the district court created a variance between its oral pronouncement of sentence and the jury's verdict on punishment.

In reviewing Hernandez-Dominguez's appellate complaint, we are mindful that "[a] jury's lawful verdict on punishment is inviolate, and the trial court must abide by it." *Ette v. State*, 559 S.W.3d 511, 517 (Tex. Crim. App. 2018). Verdicts should be held good if the jury's intentions can reasonably be ascertained. *Ainsworth v. State*, 517 S.W.2d 274, 277 (Tex. Crim. App. 1975); *Perez v. State*, 21 S.W.3d 628, 631 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see Williams v. State*, No. 03-18-00267-CR, 2018 Tex. App. LEXIS 5406, at *38 (Tex. App.—Austin July 18, 2018, pet. ref'd) (mem. op., not designated for publication). "Verdicts should receive a liberal rather than a strict construction, and if the finding of the jury can be reasonably

8

ascertained, from whatever source, the verdict should be held valid." *Ainsworth*, 517 S.W.2d at 277; *Perez*, 21 S.W.3d at 631. We may "examine the court's charge to ascertain the certainty of the jury's intention." *Ainsworth*, 517 S.W.2d at 277.

Here, the court's charge on punishment instructed the jury in Paragraph III that if it were to recommend community supervision, it would have to express that recommendation in its verdict and make an appropriate finding as to Hernandez-Dominguez's lack of a prior felony conviction:

> The defendant in this case has filed an affidavit in terms of law stating that he has never been convicted of a felony in this state or any other state. Our law provides that where a person is convicted for the offenses contained in Paragraph I as listed above, and the jury assesses the punishment at imprisonment in the Texas Department of Criminal Justice, Institutional Division, for any term of years not more than 10, and they further find that the defendant has never been convicted of a felony in this state or any other state, they may, in their discretion, recommend community supervision for the defendant; and *in case you decide to recommend community supervision for the defendant, let your verdict show that you find that the defendant has never been convicted of a felony in this state or any other state, and further show that you recommend community supervision for the defendant.*

(Emphases added.). But if the jury decided against a community-supervision recommendation, Paragraph IV of the court's charge on punishment instructed the jury that no express finding was necessary: "If you do not desire to grant community supervision to this defendant, you will say nothing in your verdict concerning the same." Following these instructions, the jury "sa[id] nothing" in its verdict form as to community supervision, leaving only a blank space in the portion for recommending that the court suspend the assessed sentence and place Hernandez-Dominguez on community supervision. *See Wooten v. State*, 400 S.W.3d 601, 609 n.44 (Tex. Crim. App. 2013) (noting presumption that jury followed trial court's written instructions in

9

absence of evidence to contrary); *Miles v. State*, 204 S.W.3d 822, 827-28 (Tex. Crim. App. 2006) (same).

When provided with the verdict on punishment, the district court read this in open court: "We, the jury, having found the defendant, Gabino Hernandez Dominguez, guilty of aggravated assault with a deadly weapon family violence assess his punishment at confinement in the Texas Department of Criminal Justice, Institutional Division for a period of eight years. In addition, we assess a fine of $0." The district court then confirmed with the presiding juror that this was the jury's verdict. Hernandez-Dominguez declined the district court's offer to poll the jury, which would have been the proper action to take if he questioned the punishment assessed. *See Cook v. State*, 390 S.W.3d 363, 373 (Tex. Crim. App. 2013) (noting that no jury poll was requested and concluding that jury's verdict, as confirmed by presiding juror, was legal verdict accepted by trial judge); *see also* Tex. Code Crim. Proc. arts. 37.04 (providing that verdict "shall" be entered upon minutes of court where jury states it has agreed on verdict, verdict is read aloud in court, verdict is in proper form and no juror dissents therefrom, and neither party requests poll of jury), .05 (requiring jury to retire again to consider its verdict if any juror polled states that verdict was not his). Additionally, Hernandez-Dominguez raised no objection to the imposition of his sentence.

Given the instructions in the charge, the jury's verdict following those instructions, and the presiding juror's confirmation that the eight-year-imprisonment sentence was their verdict, the jury's intention here "can be reasonably ascertained." *See Ainsworth*, 517 S.W.2d at 277; *Perez*, 21 S.W.3d at 631; *see also Williams*, 2018 Tex. App. LEXIS 5406, at *38. The jury's intention to assess Hernandez-Dominguez's punishment of imprisonment without

10

community supervision is also supported by other portions of the record, including the attorneys' closing arguments and the evidence presented during the punishment phase.

As we have noted, during closing arguments on punishment, defense counsel told the jury that if they determined that Hernandez-Dominguez should not have his sentence probated, they were not required to assess punishment at more than ten years' imprisonment, but rather, could "give him any term. . . . If you give him four years, you can say we think he should serve four years in prison, and we don't think it should be community supervision. That's what the verdict form shows you in the back." Defense counsel also pointed out that the jury was asked first "to assess a sentence, and then if it's two to ten years, whether or not it should be community supervision or not, but you are not bound to automatically give him community supervision if his sentence is under ten." For his part, the prosecutor told the jury that if it were to recommend probation, "the only sentence you need to give, the only sentence whatsoever is 10 years [of community supervision]. Anything less than that is not an [e]ffective enough deterrent. Ten years is the maximum sentence." The jury's verdict on punishment conforms with the suggestions made during these arguments. That is, by giving less than ten years' imprisonment, the jury could have reasonably indicated that: (1) it understood defense counsel's argument that it was not required to give community supervision for an imprisonment sentence of under ten years and (2) it agreed with the prosecutor's suggestion that anything less than ten years' community supervision was an inadequate deterrent.

Finally, the punishment-phase evidence supports the jury's rejection of community supervision. The jury found Hernandez-Dominguez guilty of aggravated assault with a deadly weapon-family violence, necessarily rejecting his denial that he threatened his girlfriend with a knife. The jury heard testimony about his prior assaults against his girlfriend

11

and listened to a recording of his jail phone call encouraging her to drop the charges against him. The jury also had evidence of his prior conviction for resisting arrest. Further, the jury heard testimony during punishment about the difficulties of supervising a probationer who has been deported, a particular risk for probationers who are not United States citizens and convicted felons.

Having considered the jury's intention expressed in its verdict, with proper reference to the instructions provided in the court's charge, we conclude that there was no violation of article 42A.055 and no variance between the district court's oral pronouncement of sentence and the jury's verdict on punishment. *See Ainsworth*, 517 S.W.2d at 277; *see, e.g.*, *Perez*, 21 S.W.3d at 631 (concluding that jury intended thirty-year sentence without fine that was read in open court, agreed to by jury without jury poll, and reflected in trial court's judgment). This jury returned a valid verdict of eight years' imprisonment without a community-supervision recommendation for Hernandez-Dominguez, and the district court accepted that verdict. Hernandez-Dominguez's eight-year-imprisonment sentence was within the proper punishment range for his second-degree felony, supported by the evidence, compliant with the jury-charge instructions and closing arguments of the attorneys, and confirmed by the presiding juror. Moreover, Hernandez-Dominguez declined the district court's offer to poll the jury, which would have been the proper action to take if he questioned the punishment assessed. *See Cook*, 390 S.W.3d at 373; *see also* Tex. Code Crim. Proc. arts. 37.04-.05. The jury's lawful verdict on punishment was imposed by the district court orally and in its judgment of conviction and should be accorded finality. *See Ette*, 559 S.W.3d at 517 (stating that "jury's lawful verdict on punishment is inviolate"); *Cook*, 390 S.W.3d at 372 (stating that when valid sentence is pronounced by trial court, it is generally accorded finality).

12

Accordingly, we overrule Hernandez-Dominguez's appellate issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   August 31, 2020

Do Not Publish