IN 
THE COURT OF CRIMINAL APPEALS
                                           
OF TEXAS
 
                                                                              

                                                               
NO. PD-0344-12

 
 
                                                      
DAVID COOK, Appellant
 
                                                                             
v.
 
                                                        
THE STATE OF TEXAS
 

                                              
ON STATE=S AND APPELLANT=S
PETITIONS FOR DISCRETIONARY 
REVIEW
                                    
FROM THE SECOND COURT OF APPEALS
                                                           
DENTON  
COUNTY

 
Cochran, 
J., delivered 
the opinion of the Court in which Meyers, Price, Womack, Johnson, and 
Alcala, JJ., joined.  Keller, P.J., filed a concurring 
opinion.  Hervey, J., filed a concurring opinion 
in which Keasler, J., 
joined.
 
                                                    
O P I N I O N 

 

A jury 
convicted appellant of manslaughter and returned a punishment verdict of six 
years= confinement with a recommendation 
that it be probated.  The trial judge formally sentenced 
appellant.  Nearly forty-five 
minutes later, the same Ajury@  returned a second punishment verdict of 
six years= confinement with no recommendation 
that it be probated.  The trial judge again sentenced 
appellant.  What happened between 
those two formal sentencing pronouncements is only partially 
reflected in the record.  On 
appeal, appellant sought reinstatement of his probated sentence.  The court of appeals held that the trial 
judge=s decision to reconvene the jury 
under the particular facts in this case was harmful error, and it remanded the 
case to the trial court for a new punishment hearing.  Neither party was satisfied with this 
resolution.  The State argues that 
the court of appeals should have found the error forfeited.[1]  Appellant argues that the court of 
appeals should have reinstated his original, probated sentence.[2]  We conclude that appellant preserved 
this re-sentencing issue for appellate review, and we reinstate his original, 
probated sentence.
I.

Appellant was 
speeding southbound on a rural farm-to-market road in his silver 1999 Ford 
Taurus when he drove by an officer parked on the northbound shoulder.  Appellant looked over his shoulder to 
see if the officer was turning around.  
As he did so, appellant inadvertently crossed into the northbound lane, 
hit a car driven by Kirk Wyborg head on, and killed 
him.  Appellant, who was twenty 
years old at the time, told a responding paramedic that he had been driving 110 
miles per hour.  At trial, appellant 
did not recall saying that and testified that his Taurus Atops out@ at 90 miles per hour.  Regardless, he admitted that he sped, 
drove recklessly, failed to yield, and caused the accident that killed Mr. Wyborg.  The 
only issue before the jury was whether appellant committed manslaughter or 
criminally negligent homicide.  The 
jury found him guilty of manslaughter.
The State put 
on no new evidence in its punishment case-in-chief.  Appellant testified that he had never been previously convicted of any crime and asked the jury 
to recommend probation.  In 
rebuttal, the State called Mr. Wyborg=s son and wife, and they asked the 
jury to send appellant to prison.  
Appellant=s attorney argued for a probated 
sentence of less than ten years.  
The State argued for a non-probated sentenceBone of at least sixteen 
years.
Deliberations 
began at 3:06 p.m.  The jury soon 
sent the trial judge a note asking, ACan we recommend a specific amount of 
time in prison and another amount of time on probation?@  At 3:26 p.m., without objection, the 
trial judge referred the jury back to the written charge and instructed them to 
continue deliberating.  At 4:28 
p.m., the jury returned its verdict, and the trial judge read the signed verdict 
form aloud:
We, the jury, having found the 
Defendant, DAVID COOK, guilty of the offense of Manslaughter, assess his 
punishment at confinement . . . for six years . . . .
We further find 
the defendant has never been convicted of a felony in 
this state or any other state, and we recommend probation of the penitentiary 
time.
The judge asked 
the presiding juror, AIs that the unanimous verdict of the 
jury?@  He stated, AIt is.@  Neither side requested a jury poll.  The judge thanked the jurors and 
discharged them.

Ladies and gentlemen, thank you 
very much for your service . . . . You are now 
discharged from the instructions I gave you earlier. 
You are free to discuss the case if you want to, but you are under no 
obligation to discuss the case with anyone. Sometimes 
the attorneys want to talk to you after the fact just . . . to find out what 
your thoughts are and your impressions about the process are. 
You=re free to do that if you want to, but you do not have 
to.  You=re now discharged. Thank you very 
much.
 
The jury left 
the courtroom at 4:30 p.m., and the judge then sentenced 
appellant.
Trial Judge:   We want to take a short recess?  Do you 
want to discuss anything with the jury before you do that, or you want to go 
right into sentencing?
 
Prosecutor:   We=re 
ready to proceed, Judge.
 
Trial 
Judge:   All 
right.  Be seated. Anything 
else before I proceed?
 
Prosecutor: 
  Judge, the only thing, at this 
point I=d request the Court assess 180 days as a 
condition.
 
Trial Judge:   All right, Mr. Cook, a jury having 
found yourBfound you guilty and set your punishment at six 
yearsBa six‑year confinement, 
probated, I am going to now impose sentence as set by the jury. I=m 
sentencing you to six years confinement . . . .  I will probate that for a period of six 
years.  There is no fine associated 
with that.  You will be required to 
complete the maximum amount of community serviceBwhich is how much in this case?  240?  Correct?
 
Prosecutor:    I believe it=s 400, Judge.
 
Trial Judge:   Four hundred?  Four hundred hours of 
community service.  I=m 
sentencing you to 180 days confinement in the Denton County Jail as a condition 
of your probation.  That 
sentence is to begin immediately. Anything 
else?
 
Prosecutor:    Nothing else on the record, 
Judge.
 
Trial 
Judge:   All 
right.  We=re off the record.
 
(Brief 
recess.)
 
(Open court, Defendant 
present.)
 
Trial Judge:   Bring them 
out.

(The jury entered the courtroom at 
4:37 p.m.)
 
Trial Judge:   Be seated . . . It has been brought 
to my attention that the jury had some question about perhaps the verdict or the 
verdict form. I=m going to readBwell, I=m going to restate what I read here that you have 
assessed. You have assessed as punishment at six years 
confinement in the penitentiary. However, you 
recommended that that time be probated. That is the 
sentence that I have imposed, so I=m going to ask you individually if that, in fact, was 
the sentence that you intended and that you voted for? 
And do we have a list of the jurors here? All 
right. As I read your name, I need you to either say 
yes or no, no meaning that was not the sentence you 
intended.[3]
 
The judge called four 
jurors= names.  
Each said Ano.@
 
Trial Judge:   Do we need to go any further than 
this?
 
Prosecutor:   I don=t think so, Judge.
 
Trial Judge:   All right. 
What I=m going to do at this point is to send you back to the 
juryroom to continue deliberating. 
Please go with the bailiff.
 
(The jury left 
the courtroom at 4:39 p.m.)
Defense:        
Judge, I move for a mistrial.
Trial Judge: 
All right. That 
motion is denied.
(Proceedings 
recessed while the jury deliberated.)
(Open court, 
Defendant present.)
Trial 
Judge:   Bring them in, 
please.
Prosecutor:    Judge, we will be asking to 
poll the jury this time.

Trial 
Judge:   I think that might be 
prudent.
At 5:11 p.m., 
the jury returned to the courtroom and delivered a second verdict assessing six 
years= confinement.  The paragraph recommending probation 
had been crossed out and initialed by the presiding 
juror.  The trial judge 
polled the jury, and each juror responded that the second verdict was his or her 
verdict.  She re-thanked the jurors 
and re-released them, and then re-sentenced appellant to six years in 
prison.

On appeal, 
appellant claimed that the trial judge erred when she reconvened the discharged 
jury, required that jury to deliberate again, and accepted a new punishment 
verdict.  He asked the court of 
appeals to Areform the judgment to reflect the 
initial, valid, legal verdict given by the jury.@[4]  The court of appeals agreed that the 
trial judge improperly  
reconvened the jury to reconsider its verdict:  AHere, the jurors separated from the 
visual presence of the trial court, were instructed that they were free to 
discuss the case with outsiders, and may have been susceptible to outside 
influence.@[5]  The court concluded that appellant was 
harmed because the jury substantively changed its written verdict from one that 
recommended probation to one that did not. But the 
court held that appellant was entitled to the specific relief he asked for at 
trialBa mistrial (and, hence, according to 
the court of appeals,[6]  a new punishment trial)Brather than the relief he asked for 
on appealBreinstatement of the jury=s original punishment 
verdict.
Justice Dauphinot disagreed and would Acorrect the judgment to reflect the 
sentence lawfully pronounced in open court before the jury was 
unlawfully recalled.@[7]
Neither party 
complains about the court of appeals=s resolution of the merits: the trial 
judge erred by recalling the discharged jury and having it re-deliberate after 
appellant had been formally sentenced. We limit our 
review to that court=s implicit preservation decision[8] 
and its judgment remanding the case for a new punishment 
hearing.
II.
A.        
Preservation

The State 
asserts that the court of appeals should not have reached the merits of 
appellant=s complaint because he failed to 
comply with Texas Rule of Appellate Procedure 33.1(a).[9]  According to the State, 
appellant=s Amistrial@ objection was neither timely nor 
specific.  It was untimely because 
it was not made until after the jurors were sent back 
to the jury room to re-deliberate, and it Awas not specific enough to preserve 
for appellate review his current complaintBthat the trial court erred in 
reconvening the jury and accepting a new punishment verdict.@[10]  Thus, appellant=s claim is 
forfeited.[11]

We 
disagree. We conclude that appellant=s Amistrial@ motion preserved error for appellate 
review because it was timely and specific, and he obtained an adverse 
ruling.  First, the motion was 
timely.  Counsel moved for a 
mistrial as soon as the trial judge told the former jurors to return to the jury 
room for a second deliberation. The State argues that, 
to be timely, appellant should have objected as soon as the trial judge said 
ABring them in.@  But the trial judge=s actions were not objectionable 
until she sent the discharged jurors back to deliberate again.  Up until that point, defense counsel may 
have wondered, AWhat is going on here?  Why is the judge polling the former 
jurors after they have been disbanded?  This is unorthodox, but my case is 
finished.  My client got 
probation.  And jurors can=t change their minds after formal 
sentencing.@  He had no reason to think his 
client=s previously imposed sentence would 
Adisappear@ until the trial judge sent the 
discharged jurors back into the jury room.  
As soon as that occurred, he moved for a mistrial.  Appellant was not required to be 
clairvoyant and anticipate that the trial judge would improperly send the 
dispersed jurors off to re-deliberate after sentencing until she actually did 
so.


Second, the 
Amistrial@ motion informed the trial judge and 
opposing counsel of appellant=s complaint: Everyone understood that 
defense counsel was saying AStop this proceedingBwhatever it is.@  Indeed, the very word Amistrial@ means A[a] trial that the judge brings to an 
end, without a determination on the merits, because of a procedural error or 
serious misconduct occurring during the proceedings.@[12]  The basis for the motion was obvious 
from the post-sentencing context.[13]  At oral argument the parties agreed that there was no simple, 
appropriate legal objection.[14]  We question whether the trial judge or 
the prosecutor could have cured or ameliorated the problem in any way other than 
by stopping the unauthorized second sentencing deliberation.[15]  AStop@ or AI request a mistrial@ is as good an objection as any under these circumstances.
There is no 
getting around the fact that appellant had already been 
sentenced and the discharged jury had dispersed outside the presence of 
the trial judge for seven minutesBa substantial amount of time under 
the circumstances.  The jurors had been expressly told that they could talk about the case 
with others, and they obviously did; otherwise, the trial judge would not have 
reassembled them.  Although we do 
not know the content of the jurors= discussions or the persons with whom 
they spoke, a lot of conversation can occur in seven minutes.  As the court of appeals noted, there are 
only a couple of Texas cases discussing the reassembly of a jury to amend or 
correct a verdict, and in those cases the jurors had 
not departed out from under the watchful eye of the court.[16]  And in those 
cases the defendant had not already been formally sentenced.[17]

At the time 
appellant moved for a mistrial, the trial was over.  The original punishment verdict was 
certain, consistent, and valid.  It 
was not inconclusive, ambiguous, or legally 
incorrect.[18]  Appellant had been 
formally sentenced in accord with that valid punishment verdict.  The fat lady 
had sung.
Counsel was 
objecting to a Ado-over,@ a 
unauthorized post-trial proceeding that was not a part of the trial.  His Amistrial@ objection was good enough to convey 
AStop.@  And he got an 
immediate adverse ruling.  He 
complied with the requirements of Rule 33.1(a) by registering his complaint at a 
time when there was an opportunity to respond to it or cure it by stopping the 
unauthorized procedure.
We therefore 
conclude that the court of appeals properly made an implicit finding that 
appellant=s sole issue was 
preserved for appellate review.
B.        
Remedy
Appellant 
claims that the only proper remedy is to reinstate the jury=s original, probated verdict.  He points to the mandatory language in 
Rule 43.3, dealing with the  judgment of the court of 
appeals:

43.3  Rendition Appropriate Unless Remand 
Necessary.  When reversing a trial court=s judgment, the court must render the 
judgment that the trial court should have rendered, except when: (a) a remand is 
necessary for further proceedings; or (b) the interests of justice require a 
remand for another trial.[19]
Appellant 
states, AIn this case, the interest of justice 
expressly requires the rendition of the appropriate judgment, the reinstatement 
of the only legal verdict and the appellant=s probation.  No further facts or additional 
enlightenment can happen during a remand.@[20]
The State 
argues that this rule required a remand for a new punishment hearing because 
reinstating the original verdict would give effect to a jury verdict that did 
not reflect the jury=s true intent: AHere, the record supports that the 
jury foreman mistakenly included probation within the first punishment verdict. 
. . . In the interests of justice, another punishment 
trialBa further proceedingBshould be 
held in order to 
obtain a true punishment verdict.@[21]  
The State also 
suggests that appellant should not be allowed to 
complain about the appellate court=s remand because Aa mistrial@ is what he asked for at trial.  The court of appeals agreed with the 
State, noting, ABased on the discrepancy between the 
relief sought by appellant at trial (mistrial) and the relief sought on appeal 
(judgment on the jury=s first, unintended, verdict), we 
cannot impose a  modified or 
reformed judgment.@ [22] 

But a new punishment hearing is not what 
appellant asked for at trial.  He 
had no complaint about his trialBa trial that was over and done with.  
He had already been sentenced to probation.  It is simply illogical to interpret his 
mistrial motion as a desire for a whole new punishment 
hearing.[23]  Article 44.29 provides for a punishment 
retrial when reversible error occurs during or in the punishment stage,[24] 
but, as Justice Dauphinot explained, the error in this 
case occurred after the punishment stage:
Here, no error 
was made during the punishment phase of the trial. The 
error was made after the punishment hearing and after the jury 
decided the punishment issue. The problem  with remanding this case for a new trial 
on punishment is that the jury had finished its job of assessing 
Appellant=s punishment before the trial court 
erred. The jurors determined guilt and determined 
punishment in a proper form. The trial court accepted 
the verdict and imposed the jury=s punishment in open court. Appellant=s sentence was probated, and he did 
not ask for a new trial. The trial had ended.[25]
Rule 43.3 
required the court of appeals to render the judgment that the trial judge should 
have rendered: A sentence of six years, probated.  AOnce a valid sentence is pronounced by a trial court, generally, it is accorded a 
measure of finality.@[26]

The State 
points to the post-trial polling of four jurors as proof that the first verdict 
was not the Atrue@ verdict.[27]  But we do not 
know what happened after the jurors had been discharged.  We do know that probation was considered during the original deliberations because the 
jury sent out a note asking whether it could recommend a specific amount of time 
in prison and another amount of time on probation.  It was told to 
refer back to the charge.  One hour 
later, the jury came back with the verdict of six-year probated 
sentence.

Furthermore, 
when the jurors were told to re-deliberate, they did so 
for over thirty minutes.  If the 
original verdict had been simply a clerical error and all jurors were always 
opposed to probation, the re-deliberation would have been quickBa couple of minutes at the most.   
Commentators have noted that a Aquestion, which has vexed courts for 
years, is how far can the legal system go in opening 
verdicts to attack . . . before the cure becomes worse than the 
disease.@[28]  The cure imposed by the court of appeals 
in this caseBa new punishment trialBis worse than the disease.  It is no remedy for 
the improper Ado-over@ 
that occurred in this case to have a second Ado-over@ 
by a new jury.  The cure for 
any untrue or unintended verdict is already in placeBthe right to have the jury polled 
before it is discharged.[29]  Neither party asked to have the jury 
polled.[30]  The trial judge, content to rely on the 
presiding juror=s confirmation that the six-year 
probated sentence was Athe unanimous verdict of the 
jury,@ accepted that legal verdict, 
discharged the jury, and sentenced appellant in open court.   We 
therefore modify the lower court=s judgment to reflect the original 
sentence of six years= imprisonment with probation of the 
penitentiary time, and we affirm the judgment as modified.[31]

Delivered: January 30, 
2013
Publish



 
 
 
 
 



 
 
 
 
 




[1] 
The State asks:  
AWhether 
the Court of Appeals improperly found that Appellant=s 
sole issue was preserved for appellate review where his objection at trial 
(motion for mistrial) was not timely made and was not specific enough to apprise 
the trial court of the complaint he makes on appeal (the trial court erred in 
reconvening jury and accepting new punishment verdict).@

[2] 
Appellant asks, AIf 
a trial judge accepts a jury verdict, releases the jurors from their oaths, 
allows the former jurors to leave the courtroom and tells them they are free to 
discuss the case, sentences the defendant in accordance with the legal verdict, 
and then improperly reconvenes the jury for a second deliberation over 
objection, should the court of appeals reform the judgment to reflect the only 
proper, legal verdict?@

[3] 
There is no suggestion in this record, nor do the parties argue, that the jury 
had originally filled out and signed two different verdict forms, and then the 
trial judge simply did not notice that the jury had returned conflicting 
verdicts.  It would have been nigh 
impossible for the trial judge to have failed to notice 
two conflicting verdict forms on the same page.  A copy of the verdict form is attached to this opinion.

[4] 
Appellant=s 
Brief on Direct Appeal at 18.

[5] 
Cook v. State, 361 S.W.3d 235, 240 (Tex. App.BFort 
Worth 2012).

[6] 
Id. at 242.

[7] 
Id. at 244 (Dauphinot, J., 
dissenting).

[8] 
The court of appeals was not asked to address any issue 
concerning preservation of error, and it did not do so sua sponte.

[9] 
The State did not raise this issue in the court of appeals, but we may address a 
procedural default question that is raised for the 
first time in a petition for discretionary review. 
Because the State prevailed at 
trial, it was not required to raise any allegations before the court of 
appeals. The Rules of Appellate Procedure require an 
appellant to file a brief but impose no such requirement on an appellee. Regardless of whether an 
appellee files a brief, a first‑level appellate court has the obligation to conduct a 
thorough review of an appellant=s 
claims, including any subsidiary issues that might result in upholding the trial 
court=s 
judgment. An appellee=s 
failure to make a particular argument is a factor that may be 
considered when this Court decides whether to exercise its discretion to 
grant review, but it does not bar this Court from granting review to address the 
issue if the Court, in its discretion, decides that review is warranted.
Volosen v. State, 227 
S.W.3d 77, 80 (Tex. Crim. App. 2007) (citation omitted).  Preservation of error is one such Asubsidiary@ 
issue that we may address.  Haley v. State, 173 S.W.3d 510, 515 (Tex. Crim. App. 
2005). 

[10] 
State=s 
Brief at 8.

[11] 
Appellant responds that the trial judge=s 
imposition of the second sentence verdict was not a forfeitable 
irregularity.  He claims that the 
right to have the judge adhere to the valid, legal verdict under which he was 
first sentenced is a Marin category‑one, Aabsolute 
requirement@ 
that is not subject to forfeiture by the failure to object. 
Mendez v. State, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004) (AA 
>systemic 
requirement= 
(also known as an >absolute 
requirement or prohibition=) 
is a law that a trial court has a duty to follow even if the parties wish 
otherwise. Any party that is entitled to appeal may 
complain on appeal that such a requirement was violated, even if the party 
failed to complain about the failure or waived the application of the law.@) (citing Marin v. State, 851 
S.W.2d 275, 280 (Tex. Crim. App. 1993)).
Appellant 
argues that Article 37.04 requires action on the part of the trial judge 
regardless of the wishes of the parties. Tex. Code Crim. 
Proc. art. 37.04 (AWhen 
the jury agrees upon a verdict, it shall be brought into court by the proper 
officer; and if it states that it has agreed, the verdict shall be read aloud by 
the judge, the foreman, or the clerk. If in proper form 
and no juror dissents therefrom, and neither party 
requests a poll of the jury, the verdict shall be entered upon the minutes of 
the court.@).  Appellant reasons that he accepted the 
jury=s 
verdict as read and affirmed in open court, and he was 
under no obligation to insist upon its proper entry and execution following 
formal sentencing.  Likewise, he was 
under no obligation to point out to the trial judge the prohibition against 
reconvening a jury to re-deliberate after that jury has returned a valid 
verdict, the jurors have separated beyond control of the judge, and the 
defendant has been formally sentenced by the judge, because any Asecond@ 
sentence would be an illegal one.  
And a party is not required to make a contemporaneous objection to the 
imposition of an illegal sentence. Mizell v. State, 119 S.W.3d 804, 806 n.6 (Tex. 
Crim. App. 2003) (AUnlike 
most trial errors which are forfeited if not timely asserted, a party is not 
required to make a contemporaneous objection to the imposition of an illegal 
sentence.@) (citation omitted).

[12] 
Black=s Law Dictionary (9th ed. 2009).   A former 
edition provides a more expansive definition: 
An erroneous, 
invalid, or nugatory trial.  
A trial of an action which cannot stand in law because of want of 
jurisdiction, or a wrong drawing of jurors, or disregard of some other 
fundamental requisite before or during trial. . . . A 
device used to halt trial proceedings when error is so prejudicial and 
fundamental that expenditure of further time and expense would be wasteful if 
not futile[.]
Black=s Law Dictionary 1002 (6th ed. 
1990). Thus, a mistrial puts an end to trial 
proceedings, while the request for a Anew 
trial@ 
recognizes a completed trial which, for sufficient 
legal reasons, has been put aside so that the issues may be tried again.  The objection of  AI 
request a mistrial@ 
seeks to stop the invalid proceedings, while the request for a Anew 
trial@ 
seeks to put aside a completed trial and start over again.  

[13] 
See Layton v. State, 280 S.W.3d 235, 240 (Tex. 
Crim. App. 2009).

[14]  In its brief, the State argued that 
appellant=s 
mistrial motion was not specific enough to put the prosecutor on notice that he 
needed to establish, on the record, that the jury had remained an undispersed unit and had not been 
subjected to any outside influence between the discharge and 
reassembly.  The State would have 
defense counsel say something along the lines of: AI 
object.  Jurors can=t 
be made to re-deliberate after sentencing unless the 
record shows that the jury has not been discharged or has not had any outside 
influence and the record does not show that here.@  The prosecutor would then have had a 
chance to ask Athe 
trial court to hold a hearing to determine whether the jurors had remained 
together or had been subject to any sort of outside influence during the 
interval between discharge and reassembly.@ State=s 
Brief at 9.  


[15] 
At oral argument, counsel for the State pointed to a 1977 Florida case in which 
Aless 
than a minute transpired before it was discovered that the jury had in fact as 
to count one of the information returned two inconsistent verdicts. The jury was immediately recalled. 
. . .  There is nothing in the 
record to reflect that the jury had in fact separated and gone their separate 
ways. On the contrary the fact that they were so 
readily re‑assembled indicates to the contrary. As we stated above there is not any evidence that the jury 
had communicated with any outsider or that any outside influence was exerted upon them, or attempted.@  Masters v. State, 344 So. 2d 616, 620 (Fla. Dist. Ct. App. 1977).  The court then explained that A[t]he 
burden is upon the appellant to establish that any such communication with or 
influence upon the jury had occurred. In fact he has not even suggested any such and therefore, he has 
not met this burden.@ 
 Id.
This case is 
not like Masters, in which the court discovered a problem with the 
verdict form and recalled the jurors to correct that obvious problem.  Here, the original verdict form was 
complete, correctly filled out, and signed.  This was a valid, legal verdict.  Instead, we can only assume that some 
jurors talked to someone about something and that conversationBwhatever 
it wasBwas recounted to the judge and led to her recalling the dismissed 
jurors.

[16] 
The court of appeals explained,
            
The circumstances described in Webber [v. State, 652 S.W.2d 
781, 782 (Tex. Crim. App. 1983)] and West [v. State, 340 S.W.2d 
813, 814-15 (Tex. Crim. App. 1960)] represent narrow exceptions to the principle 
that when a jury has been discharged, it loses its identity as a jury, and it 
therefore may not redeliberate and assess a different 
punishment. . . . But the facts in this case do not 
match those in Webber and West. In each 
of those cases,  when the trial 
court ordered the jury to reconvene, the jurors were still within eyesight of 
the trial court so that the trial court knew, and the record affirmatively 
disclosed, where the jurors had been and who they had talked to. Here, the jurors separated from the visual presence of the 
trial court, were instructed that they were free to 
discuss the case with outsiders, and may have been susceptible to outside 
influence.
Cook v. State, 361 S.W.3d 
235, 240 (Tex. App.CFort 
Worth 2012).  

[17] 
Webber, 652 S.W.2d at 782 (AThe 
defendant requested ten days for sentencing. The court 
granted the request@); 
West, 340 S.W.2d at 815 (AThe 
Court then accepted the corrected verdict over defendant=s 
properly recorded objection and exception to the court=s 
ruling and proceeded to sentence the defendant in accordance with the corrected 
verdict which found him guilty of driving while intoxicated.@).

[18] 
Cf. Reese v. State, 773 S.W.2d 314, 317 (Tex. Crim. App. 1989) (AAn 
incomplete or unresponsive verdict should not be received by the court. It is not only within the power, but it is the duty of the 
trial judge, to reject an informal or insufficient verdict, call to the 
attention of the jury the informality or insufficiency, and have the same 
corrected with their consent, or send them out again to consider their 
verdict.@) (internal citations 
omitted).

[19] 
Tex. R. App. 
P. 43.3.

[20] 
Appellant=s 
Brief at 26.

[21] 
State=s 
Response Brief at 7.

[22] 
Cook, 361 S.W.3d at 242-43.

[23]  As we explained in footnote 12 
supra, the terms Amistrial@ 
and Anew 
trial@ 
do not mean the same thing.  
Appellant asked to stop the invalid proceeding by requesting a mistrial; 
he never asked for a new trial or a new sentencing hearing.

[24] 
Tex. Code Crim. 
Proc. art. 44.29(b) (AIf 
the court of appeals or the Court of Criminal Appeals awards a new trial to a 
defendant other than a defendant convicted of an offense under Section 19.03, 
Penal Code, only on the basis of an error or errors made in the punishment stage 
of the trial, the cause shall stand as it would have stood in case the new trial 
had been granted by the court below, except that the court shall commence the 
new trial as if a finding of guilt had been returned and proceed to the 
punishment stage of the trial under Subsection (b), Section 2, Article 37.07, of 
this code.@).

[25] 
Cook, 361 S.W.3d at 244 (Dauphinot, J., dissenting).

[26] 
43A George E. Dix & John M. 
Schmolesky, Texas Practice: 
Criminal Practice and Procedure ' 
46:14, at 21 (3d ed. 2011); Ex parte Hayden, 215 S.W.2d 620, 622 (Tex. 
Crim. App. 1948) (AIn 
felony cases, it is the duty of the judge to pronounce sentence on the judgment 
of conviction, and the sentence is in fact the final judgment of the case.@).  In State v. Aguilera, 165 S.W.3d 
695, 697-98 (Tex. Crim. App. 2005), we recognized that, if the defendant elects 
sentencing by the judge, the trial judge retains plenary power to modify his 
sentence on the day sentence is pronounced, before court adjourns for the 
day.   
See id. at 699 (Athis 
is a >sauce 
for goose is sauce for gander= 
rule which protects both defendants and society‑at‑large from a trial judge=s 
accidental misstatements or momentary mistakes.@) (Cochran, J., concurring).  There is no analogous rule for a jury 
modifying its sentence after it has been discharged, 
and the defendant has been formally sentenced in accord with that valid 
verdict.

[27] 
The record is silent on who prompted the trial judge to poll the jury.  In any event, this was not an Article 
37.05 poll because it took place after the verdict had been 
accepted and appellant had been sentenced.

[28] 
Steven Goode, Olin Guy Wellborn III 
& M. Michael Sharlot, 1 Texas Practice: Guide to 
the Rules of Evidence ' 
606.2, at 673 & 675‑76 (3d ed. 2002) (discussing Rule 606).  We note that the rationales that support 
the prohibition of unrestricted probing into jury deliberations also support the 
prohibition of revisiting a criminal verdict by a discharged jury whose members 
have separated.  See State ex 
rel. Rosenthal v. Poe, 98 S.W.3d 194, 212-13 (Tex. Crim. App. 2003) 
(Cochran, J., concurring) (AMaintaining 
the secrecy of jury deliberations has traditionally been supported by five 
distinct rationales: 1. preventing tampering with the jury by outside 
influences; 2. protecting the jury from post‑verdict 
harassment; 3. protecting the finality of jury verdicts; 4. protecting robust 
freedom of debate during deliberations; 5. promoting community trust in the 
jury.@) (footnotes omitted).

[29] 
Article 37.05 of the Code of Criminal Procedure provides:
The State or the defendant 
shall have the right to have the jury polled, which is done by calling 
separately the name of each juror and asking him if the verdict is his. If all, when asked, answer in the affirmative, the verdict 
shall be entered upon the minutes; but if any juror 
answer in the negative, the jury shall retire again to consider its 
verdict.

[30] 
The right to a jury poll is forfeited by the failure to request it before the 
verdict is accepted.   Mathis v. State, 471 
S.W.2d 396, 398 (Tex. Crim. App. 1971) (when party does not request a jury poll, 
the right is waived); Wood v. State, 87 S.W.3d 735, 739 (Tex. App.BTexarkana 
2002, no pet.) (AThe 
juror=s 
remarks were made after a jury poll was waived and the verdict was accepted, in 
fact, the next day. Wood is not entitled, thereafter, 
to have the jury return and continue deliberations, as he would have been had 
the juror=s 
remarks been made during a jury poll.@). 


[31] 
Tex. R. App. P. 
78.1(b).