# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

<hr>

## NO. 03-14-00437-CV

<hr>

**In the Matter of N. G.-D.**

<hr>

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. JV-31,751, THE HONORABLE RHONDA HURLEY, JUDGE PRESIDING**

<hr>

## M E M O R A N D U M   O P I N I O N

Appellant, N. G.-D., appeals the juvenile court's order transferring him from the Texas Juvenile Justice Department (TJJD)[1] to the Texas Department of Criminal Justice–Institutional Division (TDCJ–ID) to complete the remainder of his 30-year determinate sentence for aggravated sexual assault of a child. *See* Tex. Fam. Code § 54.11 (governing juvenile court's decision to parole or transfer juvenile offender); Tex. Hum. Res. Code § 244.014 (authorizing TJJD to refer juvenile offender between age 16 and 19 for transfer to TDCJ); Tex. Penal Code § 22.021(a)(1), (2)(B) (aggravated sexual assault of a child). We affirm the juvenile court's transfer order.

## DISCUSSION

In June 2011, the district court, sitting as a juvenile court, adjudicated appellant delinquent of two counts of aggravated sexual assault of a child for sexually assaulting an

<hr>

[1] The Texas Juvenile Justice Department was formerly known as the Texas Youth Commission (TYC).

eight-year-old neighbor boy.[2] *See* Tex. Fam. Code § 54.03(f); Tex. Penal Code § 22.021(a)(1), (2)(B). The court placed appellant on determinate-sentence probation for ten years for one of the counts. *See* Tex. Fam. Code §§ 53.045(a), 54.04(d)(3), (q). The court severed out the second count, postponing disposition pending appellant's progress on the probated count. In April 2012, after appellant absconded from a halfway house, the court assessed a determinate sentence of 30 years on the previously severed out count and placed appellant in the custody of TJJD. *See id.* §§ 53.045(a)(5), 54.04(d)(3). In January 2014, 21 months into appellant's determinate sentence, TJJD requested a transfer hearing and recommended that appellant, now almost 19 years old, be transferred to TDCJ. *See* Tex. Hum. Res. Code § 244.014. After a two-day transfer hearing, the juvenile court ordered appellant to serve the remainder of his 30-year determinate sentence in the custody of TDCJ. *See* Tex. Fam. Code § 54.11(a),(i).

In his sole issue on appeal, appellant asserts that the juvenile court abused its discretion by failing to make explicit findings explaining the reasons for its decision to transfer him to TDCJ, by failing to consider his best interests when making the decision, and by failing to allow him to present argument at the transfer hearing.

---

[2] The evidence at the contested adjudication hearing showed that the sexual abuse began when the young boy was eight and continued over the course of just under a year. On numerous occasions, appellant masturbated the boy with his hand and penetrated the boy's anus with his sexual organ. Appellant lured the boy into his apartment to play, showed the boy pornography, and then sexually assaulted him. On some occasions, appellant gave the boy money in exchange for sex.

*Failure to Make Findings*

Appellant first contends that the juvenile court erred in not making findings, orally or in writing, to explain the basis for its decision to transfer him to TDCJ. However, the record demonstrates that appellant never requested that the juvenile court make such findings nor did he object to the failure of the court to do so.

Juvenile proceedings are governed by the Juvenile Justice Code, Title 3 of the Texas Family Code, *see id.* §§ 51.01–61.107, and, although quasi-criminal in nature, are considered civil cases and are generally governed by the Texas Rules of Civil Procedure, *see id.* § 51.17 (subject to certain exceptions, or when in conflict with provisions of Juvenile Justice Code, Texas Rules of Civil Procedure govern proceedings under Juvenile Justice Code); *In re Hall*, 286 S.W.3d 925, 927 (Tex. 2009) (noting that juvenile proceedings are civil cases "although [they are] quasi-criminal in nature"); *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002) ("The Family Code, which governs juvenile delinquency proceedings in Texas, requires that they be conducted under the Texas Rules of Civil Procedure[.]"); *see also In re Dorsey*, 465 S.W.3d 656, 657 (Tex. Crim. App. 2015) (Richardson, J., concurring) ("Except when in conflict with a provision of the Family Code, the Texas Rules of Civil Procedure govern juvenile proceedings.") (citing Tex. Fam. Code § 51.17(a) and *In re M.R.*, 858 S.W.2d 365, 366 (Tex. 1993)). Accordingly, the Texas Rules of Civil Procedure regarding district court findings govern this issue.

Rule of Civil Procedure 296 requires a formal request to be filed within 20 days of the judgment before a district court is obligated to make written findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. Appellant did not file a proper and timely request. In fact, the record

3

reflects that appellant never requested, orally or in writing, that the juvenile court make findings at any time. Thus, appellant has failed to preserve this complaint for review. *See Stangel v. Perkins*, 87 S.W.3d 706, 709 (Tex. App.—Dallas 2002, no pet.) (trial court was not obligated to make written findings of fact and conclusions of law because no timely request was filed; failure to timely and properly request findings and conclusions does not preserve error); *see also* Tex. R. App. P. 33.1(a) (to preserve complaint for appellate review, party must have presented to trial court a timely request, objection, or motion that states the specific grounds for desired ruling and complies with requirements of Texas Rules of Civil Procedure).

Appellant relies on *Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014), to support his contention that the juvenile court abused its discretion in ordering his transfer to TDCJ without stating the reasons for its decision to transfer. In *Moon*, the Court of Criminal Appeals addressed the specificity required in a juvenile court's transfer order under section 54.02 of the Juvenile Justice Code—the statute governing the juvenile court's waiver of jurisdiction and transfer of a juvenile offender for prosecution in adult criminal court—as well as the standard of appellate review applicable in an appeal from that order. *See Moon*, 451 S.W.3d at 44–48; *see also* Tex. Fam. Code § 54.02. The Court observed that, before a juvenile court may exercise its discretion to waive jurisdiction over an alleged juvenile offender, the court must consider the non-exclusive statutory factors of section 54.02(f) to facilitate the juvenile court's balancing of the "potential danger to the public" posed by the particular juvenile offender "with the juvenile offender's amenability to treatment." *Moon*, 451 S.W.3d at 38; *see* Tex. Fam. Code § 54.02(f). If the juvenile court decides to waive jurisdiction over the juvenile, then the statute directs it to "state specifically" in a written

4

order "its reasons for waiver and [to] certify its action, including the written order and findings of the court." *Moon*, 451 S.W.3d at 38 (quoting Tex. Fam. Code § 54.02(h)).

Appellant's reliance on *Moon* is misplaced. In *Moon*, the Court analyzed the juvenile court's abuse of discretion in connection with a statute that mandated the juvenile court—after considering certain required factors—to specifically explain its decision and explicitly state those reasons in the transfer order. *See id.* at 38, 49; Tex. Fam. Code § 54.02(h). The statute at issue here, section 54.11 of the Family Code, which governs post-adjudication transfers to TDCJ, contains no requirement that the juvenile court make findings stating the reasons for its decision to transfer the juvenile to TDCJ or to put them in the transfer order. *See* Tex. Fam. Code § 54.02. Unlike *Moon*, the juvenile court here did not fail to comply with the applicable statutory requirements. Consequently, we find no abuse of discretion in the juvenile court's failure to make explicit findings explaining its decision to transfer, particularly when not requested to do so.

### Failure to Consider Appellant's Best Interests

Appellant also maintains that the juvenile court abused its discretion "in transferring appellant into the adult prison system when it failed to consider the best interest of appellant."

When a juvenile is given a determinate sentence, upon TJJD's request to transfer the juvenile to TDCJ, the trial court is required to hold a hearing. *See id.* § 54.11; *see also* Tex. Hum. Res. Code § 244.014. Following the hearing, the court may either (1) order the return of the juvenile to TJJD or (2) order the transfer of the juvenile to the custody of TDCJ for the completion of his

5

sentence.[3] *See* Act of May 27, 1987, 70th Leg., R.S., ch. 385, § 13, 1987 Tex. Gen. Laws 1896, 1897 (current version at Tex. Fam. Code § 54.11(i)). When conducting the transfer or release hearing, the juvenile court

> *may* consider the experiences and character of the person before and after commitment to [TJJD], the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of [TJJD] and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.

Tex. Fam. Code § 54.11(k) (emphasis added). Consideration of this non-exclusive list of statutory factors is discretionary. *See* Tex. Gov't Code § 311.016(1) ("'May' creates discretionary authority or grants permission or a power."). The juvenile court is not obliged to consider all of the factors listed, and it may consider relevant factors not listed. *In re N.K.M.*, 387 S.W.3d 859, 864 (Tex. App.—San Antonio 2012, no pet.); *In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied). Moreover, the juvenile court can assign different weights to the factors considered. *In re N.K.M.*, 387 S.W.3d at 864; *In re J.J.*, 276 S.W.3d at 178.

In this case, the juvenile court heard evidence at the transfer hearing about the nature of the underlying offense, appellant's traumatic childhood, his criminal history, his substance abuse history, his ongoing behavioral problems, his continued inappropriate sexual conduct, his failure to

---

[3] This portion of the statute was amended in 2013 to include the possibility of returning a juvenile to a "post-adjudication secure correctional facility" in addition to TJJD. *See* Act of May 24, 2013, 83d Leg., R.S., ch. 1323, § 6, 2013 Tex. Gen. Laws 3506, 3509. However, this amendment is not applicable to appellant because his conduct occurred before the effective date of the amendment. *See id.* §§ 12, 13, at 3512.

successfully complete a sexual-behavior treatment program, and his commission of a new felony offense while committed to TJJD.[4]

Katherine Hallmark, a psychologist at the Giddings State School, testified that she conducted a forensic risk assessment on appellant, and her report of the assessment was admitted into evidence for consideration by the juvenile court. She testified about appellant's various mental health diagnoses based on several psychological evaluations, including those from the Travis County probation department and subsequent TJJD evaluations. Appellant's diagnoses included sexual abuse of a child/perpetrator, conduct disorder, and poly-substance dependence. Dr. Hallmark also reported that appellant displays several antisocial traits, such as failure to conform to social norms, deceitfulness, impulsivity, irresponsibility, disregard for others, and lack of remorse. The psychological evaluations reflect that appellant has between low average and borderline intellectual functioning and has low academic skills. Dr. Hallmark explained that appellant's performance regarding intellectual functioning, academic functioning, and cognitive deficit are "more consistent with a suboptimal educational background than with his cognitive deficits." His problems are "more related [to] a culturally impoverished environment."[5]

---

[4] The evidence at the transfer hearing demonstrated that on one occasion while in class, appellant exposed his fully erect penis to a teacher's aide and fellow classmates and began masturbating. At least three of the students were younger than 16 years of age. Appellant was subsequently charged and convicted in adult criminal court of indecency with a child by exposure. *See* Tex. Penal Code § 21.11(a)(2)(A). At the time of the transfer hearing, appellant was serving a two-year sentence in TDCJ for that offense.

[5] The record reflects that appellant is a Honduran national. His mother left when he was three and he was then raised by his grandparents until his grandmother died. He then lived alternatively with his father and grandfather until he traveled alone to the United States to be with his mother when he was 13 years old.

7

In her testimony, Dr. Hallmark described appellant's childhood—characterized by abandonment by his mother, the death of his primary caregiver (his grandmother), physical abuse by his father, and juvenile gang involvement—as "extremely traumatic," "really stressful," and "extremely chaotic." As a child he suffered "exposure to violence, parental criminality, poor role models, attachment problems, [and] poor school achievement." Consequently, while at TJJD, appellant received services to address his issues, including ESL (English as a second language) services, specialized reading classes, a vocational certification course, psychiatry services for medication, extensive treatment by a psychologist, a sex-offender treatment program, and an alcohol and drug treatment program. While she empathized with his traumatic history and recognized its impact on appellant, the doctor testified that appellant has not responded to the interventions offered and has not progressed in his treatment. In her testimony, Dr. Hallmark said that appellant does not have a motivation for change, does not appear to try to interrupt his inappropriate sexual behavior, has an external focus of control, lacks empathy for others, uses cognitive distortions, demonstrates attitudes reflective of reoffending, and exhibits "risky, impulsive behavior." "[Appellant] knows that his behavioral choices are wrong, and yet he doesn't try to change his thinking to interrupt his behaviors." Dr. Hallmark acknowledged that appellant is in need of further sex offender treatment, substance abuse treatment, and mental health treatment but testified that he is "not appropriate for treatment completion" because he has "a problem with poor compliance to treatment." She observed that his new felony sexual offense reflects that appellant is not using any of the skills that he learned from treatment in his daily life, and she expressed concern about appellant's lack of progress while

8

at TJJD: "he currently thinks in the same manner that he did before[,] suggesting that he hasn't made any changes in thought process that supports criminal offending."

In support of TJJD's recommendation to the juvenile court that appellant be transferred to TDCJ, Dr. Hallmark indicated in her testimony that appellant could not safely be transitioned into the community because he has not demonstrated sufficient risk reduction, has not achieved the necessary skills and protective factors, and does not understand his pattern of offending enough to develop a safe risk-management-transition plan. She noted that "[h]is behavior continues to be problematic" and conveyed that appellant's pattern of behavior put society at risk. Specifically, his pattern of non-compliance with both probation services and TJJD services—a pattern in which he committed felony offenses under both types of intervention—suggests that if he was placed on additional intervention on parole "he is at risk for committing another felony offense just as he did on probation and at TJJD." Dr. Hallmark summarized, "[Appellant's] risk factors are really quite notable, and his pattern of behavior and lack of internalization [of] treatment concepts justifies the recommendation to protect the community."

Dr. Enrique Covarrubias, a psychologist at the Giddings State School who provided therapy to appellant, also testified at the transfer hearing. Regarding appellant's intellectual capacities or abilities, Dr. Covarrubias agreed that appellant has low average to borderline IQ. Concerning appellant's mental health issues, the doctor testified that appellant was not a "high need mental health kid" but instead was "relatively stable." He indicated that appellant's actions were disruptive, "seemed somewhat premeditated," and could be "accounted for by the conduct disorder." When asked about a previous psychological evaluation indicating that appellant "present[ed] as an

9

angry, impulsive, aggressive, lonely young boy, who has very little insight into the issues in his life that have contributed to his current problems and difficulties," Dr. Covarrubias agreed with the accuracy of the description except that he did not believe that appellant was very impulsive. He attributed appellant's behavior to his "negative thinking, his criminal thinking"—his belief that "[he] could get away with it." Dr. Covarrubias testified that in his sessions with appellant, he focused on problem solving, stress management, dealing with situations, and coping with uncomfortable feelings. He also addressed "elementary" concerns such as medication compliance, understanding basic rules, and doing class work and homework, and gave appellant "psycho-education" about gangs and drugs. In addition, he encouraged appellant to know his risk factors and protective factors and to use his coping skills. Dr. Covarrubias testified that in appellant's therapy there was "a lot about decision making." Although the doctor tried to remind appellant to be aware of his distorted and criminal thinking patterns, "it just didn't seem to be enough." Dr. Covarrubias testified that during the course of his treatment of appellant, he did not observe any desire by appellant to modify his "defiant, dangerous, aggressive, and violent behavior," associate with positive peers, utilize and fully take advantage of available treatment programs and resources, refrain from illicit substance use, engage in "healthy and pro-social behaviors," or discontinue his gang involvement. The doctor indicated that he did not think that appellant "ha[d] gained any insight into the nature or origin of his psychological and behavioral problems."

Finally, Leonard Cucolo, TJJD's court liaison, testified for the State, and his report was admitted into evidence. Cucolo testified that appellant was reviewed for a possible transfer to TDCJ "as a result of basically meeting the entire policy criteria for return to court for possible

10

transfer": he engaged in "chronic disruption of the program," meaning he was placed in security five or more times; he engaged in a new felony offense, for which he was charged and subsequently convicted; and he committed three or more major rule violations that were confirmed through a Level 2 hearing (appellant had six). Based on appellant's conduct while committed to TJJD, every member of the special services committee, the body making TJJD's recommendation, "unanimously agreed that [appellant] should be returned to court for the purpose of transfer [to TDCJ]." Cucolo reported that appellant had 97 documented incidents of misconduct and was "placed on security" on 46 occasions. His report detailed several incidents that demonstrated appellant's "aggressive and disruptive behaviors," which included assaulting another student (he struck the boy in the face repeatedly with both fists until he was physically restrained by TJJD personnel), possessing prohibited items (on separate occasions, a razor, a handcuff key, and a needle), and threatening another boy with assault if he did not perform oral sex on appellant. Cucolo expressed concern because, despite being in the program for almost 21 months, appellant continued to engage in major rule violations, including the commission of new offenses, fleeing apprehension, fighting (on one occasion the fight was gang related), possessing prohibited items, exposure, and assault. In offering TJJD's recommendation that appellant be transferred to TDCJ to complete his determinate sentence, Cucolo's report concluded that

> [appellant] committed the very serious offense of aggravated sexual assault in which he sexually assaulted a nine year old male neighbor. [Appellant] has not benefitted from his participation in the treatment programs offered during his assignment to TJJD. Instead, his overall behavior and progress in the treatment program[s] have been poor despite continued, varied attempts at intervention to facilitate his progress.

11

Appellant concedes in his brief that "the evidence does weigh heavily against [him]." Yet, he maintains that the juvenile court abused its discretion "in determining that it was in appellant's best interest to transfer him to [TDCJ]" because he is "an individual in need of treatment that cannot be addressed in the adult penitentiary system." He contends that "a primary factor listed [by appellate courts] to support the decision to transfer [a juvenile into the adult prison system] is the juvenile's *volitional* acts" (emphasis added) and asserts that he should not be transferred to TDCJ because "[his] behavior was that of an individual suffering from addiction (as well as someone with low mental capacity) who was unable to control his impulsive behavior." Nothing in the record supports this assertion. The evidence at the transfer hearing demonstrated that in spite of being provided multiple interventions and treatments to facilitate behavioral changes, appellant chose to persist in his disruptive and sexually inappropriate behavior. There is no evidence suggesting that he was unable to control his behavior, merely that he was unwilling to do so.

In sum, there was extensive testimony at the transfer hearing about appellant's conduct and performance in TJJD. The record reveals that appellant was committed to TJJD for a 30-year determinative sentence for repeatedly sexually assaulting an eight-year-old boy. Although there was evidence of appellant's traumatic childhood as well as evidence that appellant made some progress, though minimal, in the sex-offender treatment program at TJJD, there was other evidence that his sexually inappropriate behavior continued, culminating in his commission of a new felony sexual offense. In support of TJJD's recommendation for transfer, there was evidence that appellant had not internalized or implemented what he had learned in the various programs and treatments to effect positive changes in his behavior. Thus, he posed a risk to the community. In making the

decision to transfer or release appellant, the juvenile court had discretion to consider the listed statutory factors as well as other relevant factors not listed and to assign different weights to the factors considered. Appellant's best interest was just one of those factors. Given the evidence presented at the transfer hearing, we cannot conclude that the juvenile court abused its discretion in determining that the relevant factors weighed in favor of transferring appellant to TDCJ to complete his determinate sentence.[6]

---

[6] Appellant asserts in his brief that "a transfer of a juvenile's determinate sentence to the adult prison system should be held to the standard now set out for transfer hearings of juveniles to the adult system [ ] as defined in *Moon v. State*." In *Moon*, the Court of Criminal Appeals explained that

> in evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review." But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard.

*Moon v. State*, 451 S.W.3d 28, 47 (Tex. Crim. App. 2014). However, as noted in our discussion of appellant's complaint about the lack of findings, the statute at issue in *Moon* contained explicit factors the juvenile court is statutorily obligated to consider. Here, the juvenile court has discretion to consider relevant factors, listed in the statute or not, when making its decision. Consequently, the "traditional sufficiency of the evidence review" called for in *Moon* may not be appropriate in this context. To the extent that appellant urges that a factual sufficiency review under normal civil appellate review standards should be conducted, we note that appellant makes no argument in his brief concerning the factual sufficiency, or lack thereof, of the evidence presented at the transfer hearing. In fact, he concedes that the preponderance of the evidence weighs heavily against him.

In any event, the evidence in this case was factually sufficient to support the juvenile court's decision to transfer appellant to TDCJ to complete his determinate sentence. Under a factual-sufficiency standard of review, we consider and weigh all the evidence in the record and may overturn a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Smith v. East*, 411 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. denied); *see Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Applying this standard, we cannot conclude that the evidence so greatly preponderates against the juvenile court's implicit findings concerning its decision to transfer appellant to TDCJ.

***Failure to Allow Argument at Transfer Hearing***

Finally, appellant complains, for the first time on appeal, that the juvenile court abused its discretion by not allowing oral argument at the release or transfer hearing.[7] *See* Tex. Fam. Code § 54.11(e) ("At the hearing, the person to be transferred or released under supervision is entitled to an attorney, to examine all witnesses against him, *to present* evidence and *oral argument*, and to previous examination of all reports on and evaluations and examinations of or relating to him that may be used in the hearing.") (emphases added).

At the close of the release or transfer hearing, immediately after appellant had rested and closed, the juvenile court made its ruling:

> Having heard this case for a day and a half, I'm not going to allow closing arguments. I'm ready to make a decision. [N. G.-D.], would you please stand?
> Based on the evidence before the Court, [N. G.-D.], I'm going to transfer you to TDCJ to serve the remainder of your sentence concurrent with your current

---

[7] We note that appellant mentioned this issue only in passing in his brief: in his factual recitations he mentioned that the juvenile court did not allow argument and then he summarily asserted in his argument that the court abused its discretion in transferring him to TDCJ. He did not cite to the relevant statute providing the right or provide any analysis. Ordinarily, the failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide authorities and record citations, waives any error on appeal. *See* Tex. R. App. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011) (appellant's brief contained no argument or citation to any authority that might support argument, therefore court decided point of error was inadequately briefed and presented nothing for review "as this Court is under no obligation to make appellant's arguments for her"); *Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004) (because appellant did not provide any argument or authority in support of contention, it was inadequately briefed); *Aldrich v. State*, 928 S.W.2d 558, 559 n.1 (Tex. Crim. App. 1996) (appellant proffered no argument or authority with respect to claims, so court considered them inadequately briefed and as presenting nothing for review). However, because appellant presented this complaint during oral argument, we address it in the interest of justice, though ultimately we do not reach the merits of this complaint because we resolve the issue against appellant based on procedural default.

14

sentence. In addition to that, I am requiring public registration upon your release from custody. I wish you the very best of luck. You are excused.

Appellant did not object when the court announced its intention to rule without hearing argument nor did he object when the court pronounced its ruling.

As previously noted in this opinion, juvenile delinquency proceedings on appeal are to be governed by the civil rules of appellate procedure as far as practicable. *In re D.I.B.*, 988 S.W.2d 753, 756 (Tex. 1999); *see* Tex. Fam. Code § 56.01(b) (in juvenile proceeding, "[t]he requirements governing an appeal are as in civil cases generally"). Generally, in order to preserve a complaint for appellate review, a party must make a timely, specific request, objection, or motion in the trial court. Tex. R. App. P. 33.1(a)(1); *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999) (Rule of Appellate Procedure 33.1 applies to both civil and criminal cases). However, because a juvenile proceeding is quasi-criminal, the general rules governing error preservation in civil cases cannot be applied across the board in juvenile proceedings. *In re L.D.C.*, 400 S.W.3d 572, 574 (Tex. 2013) (citing *In re C.O.S.*, 988 S.W.2d at 765). The Texas Supreme Court has noted that it is "unwise and problematic to apply one preservation rule in adult, criminal proceedings and another, stricter rule in juvenile cases." *In re C.O.S.*, 988 S.W.2d at 767; *see In re State ex rel. Tharp*, No. 03-15-00223-CV, 2015 WL 1905959, at *1 (Tex. App.—Austin Apr. 24, 2015, orig. proceeding). Therefore, precedent from analogous adult criminal proceedings may be instructive in juvenile cases. *In re C.O.S.*, 988 S.W.2d at 767; *In re I.L.*, 389 S.W.3d 445, 452 (Tex. App.—El Paso 2012, no pet.); *see, e.g.*, *In re D.I.B.*, 988 S.W.2d at 756 (looking to jurisprudence from Texas

Court of Criminal Appeals to determine when harm analysis should be performed in juvenile delinquency proceedings).

The record here establishes that appellant lodged no objection to the juvenile court's expressed intention not to allow argument nor did he object to the court's ruling based on the lack of opportunity to present argument. Appellant, then, must address the issue of preservation of error and convince this Court that the error of which he complains is properly before this Court. Appellant maintains that he was not required to object at the hearing because such an objection would have been futile since the juvenile court had already expressed its intent not to allow argument. Alternatively, he appears to argue that the error is fundamental error to which no objection is necessary. We disagree and conclude the error alleged here is not immune from the requirement that it be preserved for our review.

The Texas Court of Criminal Appeals has consistently held that the failure to object in a timely and specific manner during trial forfeits a complaint, even when the error may concern a defendant's constitutional rights. *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014), *cert. denied*, 135 S.Ct. 1158 (2015); *see Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002) ("All but the most fundamental rights may be forfeited if not insisted upon by the party to whom they belong." (quoting *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997))). An exception applies to two "relatively small categories of errors:" (1) violations of waivable-only rights; and (2) denials of absolute, systemic requirements. *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003); *see Bessey v. State*, 239 S.W.3d 809, 812 (Tex. Crim. App. 2007) ("Errors

may be raised for the first time on appeal if the complaint is that the trial court disregarded an absolute or systemic requirement or that the appellant was denied a waivable-only right that he did not waive."); *Neal v. State*, 150 S.W.3d 169, 175 (Tex. Crim. App. 2004) ("Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only . . . all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a).").

"Waivable-only" rights are "rights of litigants which must be implemented by the system unless expressly waived." *Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004) (citing *Marin*, 851 S.W.2d at 279–80); *Saldano*, 70 S.W.3d at 888; *Johnson v. State*, No. 03-12-00006-CR, 2012 WL 1582236, at *2 (Tex. App.—Austin May 4, 2012, no pet.) (mem. op., not designated for publication). Examples of "waivable-only" rights include the right to effective assistance of counsel, the right to a jury trial, and a right conferred by a statute that affirmatively states the right is waivable only. *Saldano*, 70 S.W.3d at 888; *Aldrich*, 104 S.W.3d at 895. A waivable-only right cannot be forfeited by a party's inaction alone; a defendant must take affirmative action to waive such a right. *See Bessey*, 239 S.W.3d at 812 ("A law that puts a duty on the trial court to act sua sponte, creates a right that is waivable only. It cannot be a law that is forfeited by a party's inaction." (quoting *Mendez*, 138 S.W.3d at 342)). While no precise rule has been announced for determining if a right is waivable only instead of forfeitable, it is important to be reminded of the reasons for requiring preservation of errors. "[O]bjections promote the prevention and correction of errors. When valid objections are timely made and sustained, the parties may have a lawful trial." *Saldano*, 70 S.W.3d at 887. Here, if the juvenile court had been

17

reminded of appellant's statutory entitlement to present argument, the court could have corrected its oversight and cured any error. We find that the statutory right at issue is not a right that is waivable only, but one that may be forfeited.

Systemic requirements—also known as absolute requirements or prohibitions—are laws that a trial court has a duty to follow even if the parties wish otherwise. *Mendez*, 138 S.W.3d at 340 (citing *Marin*, 851 S.W.2d at 280); *Johnson*, 2012 WL 1582236, at *2; *see Cook v. State*, 390 S.W.3d 363, 368 n.11 (Tex. Crim. App. 2013). "Any party that is entitled to appeal may complain on appeal that such a requirement was violated, even if the party failed to complain about the failure or waived the application of the law." *Mendez*, 138 S.W.3d at 340 (citing *Marin*, 851 S.W.2d at 280). Examples of systemic requirements include jurisdiction of the person or subject matter and whether a penal statute is in compliance with the separation of powers section of the Texas Constitution. *Aldrich*, 104 S.W.3d at 895; *see Saldano*, 70 S.W.3d at 888.

In this case, the error alleged here, even though characterized by appellant as "fundamental" in nature, does not fall within the exceptions that would excuse the failure to lodge an objection in the juvenile court. The juvenile court neither disregarded an absolute requirement nor denied appellant a waivable-only right. There is simply no authority that would suggest that the type of error alleged here—the failure to grant a statutory right to present argument at a juvenile transfer hearing under section 54.11—is in the nature of a systemic defect or a right that is waivable only. Accordingly, appellant's complaint must have been raised in the juvenile court to preserve the issue for our review. The only issue is whether appellant complied with Rule 33.1(a). He did not.

18

As already noted, at the conclusion of the transfer hearing appellant did not object to the juvenile court's expressed intent to disallow argument or to its failure to allow argument when it pronounced its ruling. Nor did appellant raise the issue in a motion for new trial. Accordingly, appellant has forfeited his right to complain about it on appeal. *See* Tex. R. App. P. 33.1(a); *Neal*, 150 S.W.3d at 175; *see also Ex parte J.L.R.*, No. 05-12-01289-CV, 2013 WL 4041554, at \*1–3 (Tex. App.—Dallas Aug. 9, 2013, no pet.) (mem. op.) (juvenile forfeited his right to complain on appeal about trial court's dismissal of his application for writ of habeas corpus with prejudice because he did not object to court's ruling at hearing that writ was dismissed with prejudice nor raise issue in his motion for new trial).

## CONCLUSION

Based on the record in this case, we cannot say that the juvenile court's decision to transfer appellant to TDCJ to complete his 30-year determinate sentence was made without reference to guiding rules or principles or that the court acted in an arbitrary or unreasonable manner. Thus, we conclude that the court did not abuse its discretion. Accordingly, we affirm the juvenile court's transfer order.

 

 

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   January 8, 2016

19